ORVILLE LITTLE v. STATE.

No. A-10302.   Jan. 3, 1945.

(154 P. 2d 772.)

Sam Y. Colby, of Madill, and Champion & Fischl, of Ardmore, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for defendant in error.

JONES, P. J.   The defendant, Orville Little, was charged by indictment presented and filed by a grand jury of Carter county, with the crime of rape in the first degree, was tried, convicted of the included offense of assault with intent to commit rape, with the punishment left to the court.   The trial court thereupon sentenced the defendant to serve a term of four years imprisonment in the State Penitentiary, and he has appealed.

This is the second appeal involving this case.   In a former appeal, we reversed the case for a new trial because of the error of the court in refusing to admit in evidence a written statement made by the prosecutrix.   Little v. State, 72 Okla. Cr. 273, 115 P. 2d 266.   The facts surrounding this alleged crime are set forth in detail in said opinion and they will not be herein again related.   Reference is hereby made to said former opinion for a detailed statement of said alleged crime.

It is first contended that the verdict is not supported by sufficient competent evidence to sustain the conviction. The testimony of the prosecutrix, which was partially corroborated by the owner of the tavern and his employee, especially concerning her physical appearance immediately after the alleged assault, are sufficient to require the court to submit the case to the jury for their consideration. Being sufficient for this purpose, the jury had a right to believe the testimony of the prosecutrix and disbelieve that of the defendant and his witnesses.   Some of the statements of the prosecutrix to this court appear highly

improbable, but since a jury of disinterested citizens have twice seen the witnesses and heard their testimony and by their verdict have held against the defendant, we do not feel that this court would be justified, under the law, in reversing the case because of the insufficiency of the evidence. The purpose of having a jury trial is to afford twelve men an opportunity to determine who among the witnesses are telling the truth, and when they have spoken upon a disputed question of fact, this court is bound by their judgment.

It is insisted that error was committed in permitting the jury to separate and go about on the various floors of the courthouse during a five-minute intermission at the commencement of the trial. The record discloses that after the jury had been duly selected and sworn to try the case and the county attorney and counsel for the defendant had each made their opening statement to the jury, that the county attorney asked for a five-minute recess before the state commenced presenting their evidence. During this five-minute recess, the jury was allowed to separate under the usual admonition by the trial court not to talk to anybody about the case nor to talk about the case among themselves or form or express any opinion as to the guilt or innocence of the defendant.

After the court had reconvened, counsel for defendant moved the court to discharge the jury and to declare a mistrial because the jury separated during the intermission. The state contended that counsel for defendant had agreed to the separation of the jury, but counsel for defendant answered by stating that it was a fundamental right of the defendant in a capital case to have the jury remain together under charge of a sworn bailiff, and that they had no power to waive this fundamental right on behalf of the accused.

After the motion for mistrial was presented, the record discloses the following proceedings:

"By the Court: Gentlemen of the Jury, the court has been trying lawsuits now for several years, and I have permitted you to separate, just a while ago, under the admonition that you were not to talk to anybody about this case or allow anybody to talk to you about the case or talk among yourselves about the case, or form or express an opinion as to the guilt or innocence of the defendant in this case, and now an objection has been made to the court permitting you to separate, which calls on the court to ask you this question: Did any of you permit anybody to speak to you about this case or did any of you speak among yourselves about this case, or did any of you speak to anybody else about the case, or did anyone form or express an opinion as to the guilt or innocence of the defendant during the five or seven minutes recess that you just had? Whereupon, the jury nodded its head in a negative manner.) By the Court: Did any of you? (Whereupon, the jurors again nodded in the negative.) By the Court: All right, I will overrule your motion."

There was no objection made at the time that the jury was allowed to separate, but the question was presented after court reconvened by the presentation of the motion for a mistrial.

The question as to whether it is error to allow the jury to separate during the progress of the trial has been before this court for consideration in many cases. In one of the latest cases, Wilcox v. State, 69 Okla. Cr. 1, 99 P. 2d 531, 536 (a capital case), the subject was fully discussed. In the body of that opinion, it is stated:

"This court has had occasion many times to construe Section 3081, O. S. 1931, 22 Okla. St. Ann. 857. We have held that on proof of a violation of this section by permitting the jury to separate after the case has been finally submitted to them, the defendant is entitled to the pre-

sumption that such separation has been prejudicial to him, and the burden of proof is on the prosecution to show that no injury could have resulted therefrom to the defendant. * * *

"This court has also uniformly held that before the final submission of a case the legal presumption is that jurors perform their duty in accordance with the oath they have taken, and that presumption is not overcome by proof of the mere fact that during an adjournment of the trial the jurors were permitted to separate. The defendant must affirmatively show that by reason thereof he was denied a fair and impartial trial, or that his substantial rights were prejudiced thereby. Forester v. State, 36 Okla. Cr. 111, 252 P. 861; Womble v. State, 50 Okla. Cr. 108, 296 P. 515; Sanders v. State, 46 Okla. Cr. 298, 287 P. 842; Weatherholt v. State, 9 Okla. Cr. 161, 131 P. 185; Smith v. State, 19 Okla. Cr. 14, 197 P. 514; Lemke v. State, 56 Okla. Cr. 1, 32 P. 2d 331."

Applying the above rules of law to the instant case, we do not find any attempt by the defendant to show that any of the jurors conversed with anybody or that by reason of their separation the defendant was materially prejudiced. We can find no error as regards this proposition.

It is next insisted that the county attorney committed error in his cross-examination of the defendant concerning a former conviction on a rape charge in the State of California.

The record discloses that on cross-examination, the county attorney asked the defendant whether he had pleaded guilty to a felony in the State of California, to which the defendant answered in the affirmative. The next question of the county attorney was as follows: "What was it?" To the asking of this question, counsel for defendant objected, stating "they can ask him if he has ever been convicted of a felony, but that is as far as they can go."

After the objection was overruled, the defendant answered "for living with a woman and her daughter."

The county attorney then proceeded to further cross-examine the defendant by asking if he had not pleaded guilty to statutory rape on a 13-year-old girl. This the defendant denied. The county attorney then further cross-examined the defendant by stating the name of the court and the nature of the sentence which he contended defendant had received for the alleged offense of statutory rape. Then, a certified copy of the record of the conviction in California was shown to defendant. After this record was submitted to the defendant, defendant admitted that he had received said sentence, but explained the circumstances surrounding the California case and his understanding of what transpired at the time he entered his plea of guilty. He specifically denied that he had raped a 13-year-old girl in California.

When a defendant takes the witness stand, the prosecution has the right to cross-examine him with the same latitude as any other witness. Under the statute, he may be interrogated concerning their convictions for crime. 12 O. S. 1941 § 381; Howard v. State, 67 Okla. Cr. 445, 94 P. 2d 947; Pryor v. State, 51 Okla. Cr. 345, 1 P. 2d 797; Abby v. State, 72 Okla. Cr. 208, 114 P. 2d 499, 115 P. 2d 266.

The scope of the cross-examination of a witness is necessarily largely a matter of discretion with the trial court. Where the prosecution in the cross-examination of the defendant questions the defendant concerning other alleged convictions for crime, the court should not allow the examination to be enlarged to such an extent as to cause the jury to place undue emphasis on the former conviction of the accused, and thus cause them to convict him

of the instant charge mainly because of the bad reputation of the accused. In the instant case, the cross-examination concerning the California conviction was lengthy but was brought about chiefly because of the evasive answers which the defendant gave to the questions of the county attorney. The court should not allow the county attorney to go into detail concerning the crime for which the defendant had been formerly convicted, as that is a collateral matter, not relevant to the crime charged and the conviction may only be inquired into for the purpose of affecting the credibility of the witness. The conviction, the name of the court in which the conviction occurred, the nature of the crime, and the date are all pertinent factors, but the details of the crime involve extraneous matters concerning which the prosecution should not inquire unless counsel for defendant on redirect examination seeks to explain the circumstances of the alleged crime for which the former conviction was sustained in order to lessen the effect of said crime on the jury in determining the credibility to be given to the witness. Then, under such circumstances, the state might, in the discretion of the trial court, be permitted to go into some details of the crime to show that it was not as pictured by defendant on redirect examination. However, these are matters which are collateral to the issues involved; i. e., the guilt or innocence of defendant of the particular crime charged, and the trial court should be extremely cautious in its limitation of the cross-examination concerning the former convictions. The record discloses that the trial court herein properly instructed the jury that the evidence of the former conviction of the defendant could be considered only as the same might affect the credibility of defendant and could not be considered as any evidence of defendant's guilt.

294

It is further contended that the county attorney was guilty of making defamatory and prejudicial statements to the jury in his closing argument. The argument complained of is the statement by the county attorney that any man that would go out and rape a woman is below the level of a dog. Counsel for defendant objected and saved their exceptions to this argument. The trial count thereupon instructed the jury as follows:

"By the Court: Gentlemen of the Jury, you will disregard the remarks of the county attorney about a man that would rape a woman would be lower than a dog. That is just a matter of opinion."

In the case of Abby v. State, supra [72 Okla. Cr. 208, 114 P. 2d 500], it is stated:

"It is the duty of the county attorney in his opening statement and closing argument to the jury to confine himself to the facts as shown by the evidence. But they have the right to draw their deductions and conclusions, and unless the statements or arguments are such that deprive a defendant of his substantial rights, or are such that would arouse the passion and prejudice of the jury to the extent that they would be swayed from arriving at a just verdict, the judgment and sentence will not be set aside on appeal."

The question of alleged improper argument of a prosecutor is constantly being brought before this court. There is no fixed rule of law which governs the prosecutor's conduct in this regard. Under his right of argument, the prosecutor and counsel for defendant each should have a wide range of discussion, illustration, and argumentation. Each of them has the right to discuss fully from their standpoint the evidence and the inferences and deductions which they make from the evidence. It is only when the argument by counsel for the state is so grossly improper and unwarranted upon some material point which

may have affected defendant's rights that a reversal can be based upon improper argument.

We do not think the statement herein under discussion is so grossly improper that it requires a reversal of the case. This is especially true in view of the admonition by the trial court to the jury not to consider said statement.

The next contention of the defendant involves the conduct of the county attorney and his assistant in their examination of the witnesses and also the alleged misconduct of the trial court in asking one of the witnesses certain questions. The record discloses that the county attorney and his assistant each did ask many leading questions of the various witnesses which they placed on the witness stand for the state. Counsel for defendant objected to some of the questions asked by the prosecutor on many occasions and the court sustained his objections and admonished the county attorney and his assistant to refrain from asking leading questions. This conduct of the prosecutor is one of the most serious assignments of error presented in this appeal, and we have carefully considered the same. It does not appear to us that the leading questions which were asked affected the testimony of any of the witnesses and generally they were not leading when it came to the material points involved in the witnesses' testimony. It is our conclusion that the defendant was not denied a fair and impartial trial by reason of this conduct on the part of the county attorney and his assistant.

The allegation that the trial court improperly interrogated the witness, Mrs. F. L. Rice, is not sustained by the record. The court did ask the witness, Mrs. Rice, a few questions at the close of her examination, but they

were not of such a nature as to indicate to the jury that the trial judge had an opinion as to the guilt or innocence of the defendant. In the former appeal, this court criticized the trial judge for his repeated interrogation of the witnesses which had a tendency to indicate his opinion as to the guilt of the defendant. However, there is no such conduct repeated in this case. We stated in the former opinion [72 Okla. Cr. 273, 115 P. 2d 270]:

"Except when it appears absolutely necessary to the administration of justice, the trial judge should not interrogate witnesses."

It is next contended that the trial judge lost control of the conduct of the trial and that the case should be reversed for the reason that the trial judge departed from Carter county and went to his home in Pauls Valley, in Garvin county, while the jury was still together and deliberating upon the case. This question was first raised in the amendment to the motion for new trial presented by the defendant. Upon the hearing of the motion for new trial, counsel for defendant requested the court to make a statement for the record as to whether the court did depart from Carter county and go to Pauls Valley in Garvin county, after the case had been submitted to the jury and while the jury was still deliberating on the case. At which time the court made the following statement:

"By the Court: The court certifies to the record that the cause, State of Oklahoma v. Orville Little, Number 3983, in the District Court of Carter County, Oklahoma, that the case was called for trial and the jury duly empaneled and so forth on Wednesday, November 19th, 1941, and that the trial progressed in a legal and regular manner until the cause was submitted to the jury. That was about seven or eight o'clock in the evening, or whatever the record shows, and that the jury deliberated on the cause until about two-thirty, A. M., of the morning of

November 20th, 1941, and that about that time, at about that hour in the morning of November 20th, 1941, the court had the bailiff to bring the jury down into open court and, the defendant being present, inquired whether the jury had arrived at a verdict, and upon their stating that they had not, the court required the jury to hand the blank verdicts and instructions to the bailiff and ad- monished the jury not to consider the case any further and to retire in charge of the bailiff for the balance of the night, or morning, and instructed them to return into open court in a body the same morning, that is, November 20, 1941, at 10:00 o'clock a. m., and then swore the bailiff as required by law, and instructed him to keep the jury together in a body and permit them to retire for the balance of the night or morning, and to return them into open court at 10:00 o'clock. The court further cer- tifies that thereafter he drove from Ardmore to Pauls Valley in Garvin county, Oklahoma, retired, and then later in the morning came back to Ardmore and into open court at about 10:00 o'clock a. m. of said 20th day of November, 1941, when the jury was ushered into the courtroom in a body by the bailiff, and in the presence of the defendant and counsel, were ordered by the court to continue their deliberations. The bailiff was ordered to hand the jury the blank verdicts and the instructions; the bailiff was duly and legally sworn and the jury re- tired to deliberate upon their verdict."

In the case of Raab v. State, 62 Okla. Cr. 361, 71 P. 2d 773, the duty of the trial judge to remain in the county where the accused is on trial until the jury is discharged was fully considered. Judge Barefoot wrote an elaborate opinion on this question and reviewed all authorities in this state and those from many others on this question. In that case, the trial judge left Johnston county and went to his home in Marietta, in Love county. While he was gone, the jury continued to deliberate upon the case. While the trial judge was in Love county, he had a tele- phone conversation with the foreman of the jury concern-

came to the conclusion, after considering all of the authori-
came to the conclusion, after considering all of the authori-
ties bearing upon this question, that it was the absolute
duty of the trial judge to be personally present so that
he could have control of the case during the trial and
during the deliberation of the jury, so that he could re-
spond to any call for the exercise of his judicial authority.

We see a distinction in the facts as quoted in Raab
v. State, supra, to those herein involved. Here, the forms
of verdict, the instructions, and other papers introduced
as evidence during the trial were withdrawn from the
jury and they were directed to cease deliberation upon
the case and retire for the night and were further di-
rected to be in court at 10 a. m., to resume their delibera-
tion. It was during this period between the time of the
retirement of the jury and 10 a. m., the following morn-
ing, that the trial judge drove to his home and slept a
few hours and returned to the courtroom and was present
when the jury was brought to the courtroom by the bailiff
to receive the forms of verdict and other papers for the
purpose of further deliberating upon the case. The pres-
ence of the judge was not absolutely necessary while the
jury was sleeping as authority to deliberate further upon
the case had been temporarily withdrawn. The reasoning
in the Raab Case and the cases cited therein in support
of the rule is not applicable to the instant case because
no question could arise calling for the presence of the
trial judge while the jury was not considering the case.

The case of Ex parte Mingle, 2 Okla. Cr. 708, 104 P.
68, is more nearly in point than any other Oklahoma case.
In that case, the trial judge lived in Canadian county
and during the trial, at divers times after the adjourn-
ment of court or suspension of the functions of the jury,

the court would go from Oklahoma City to his home in Canadian county. It was therein held that the presence of the trial judge was not essential during the adjournment as the jury was not then functioning and there was no legal reason requiring the presence of the said judge during said period. In the instant case, the trial judge did not lose contact with the proceedings and there was no part of the trial in progress during any of his absence, and we do not feel that the rule in the Raab Case should be further extended to include such a situation as is herein shown.

We have carefully considered all of the various assignments of error. The jury deliberated a long time, but not such an excessive period as would force one to the conclusion that the trial judge was keeping them together an unnecessarily long time to force a verdict. However, the verdict which was returned found the defendant guilty of the included offense of assault with intent to commit rape. The jury evidently did not believe the story of the prosecutrix that she had been forcibly raped. The jury could not agree upon the punishment but left the same to the trial court. Under the law, the punishment could have been a penitentiary sentence or a jail sentence as low as one day or a fine in any sum not exceeding $500. The trial judge gave the defendant almost the maximum. The facts do not justify the imposition of such a sentence. The prosecutrix' own testimony would not justify the imposition of so harsh a sentence because, under her own admission, she invited a lot of her trouble by her conduct in going with the defendant from Madill to Ardmore. She was a married woman and under the record approached the defendant to take her to Ardmore to the dance. Her written statement which she signed in the presence of her husband and

uncles, that the whole thing was as much her fault as defendant's, when considered along with all the other circumstances of the case, has convinced us that the ends of justice require a modification of the judgment imposed from a sentence of four years in the State Penitentiary to a fine of $500 and all costs of this action.

It is therefore ordered that the judgment and sentence of the district court of Carter county be modified from a sentence of four years in the State Penitentiary to a fine of $500 and all costs of this proceeding, and the judgment and sentence as thus modified is affirmed.

BAREFOOT, J., concurs. DOYLE, J., not participating.