Lee Boyd BARHAM, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. A–18105.

Court of Criminal Appeals of Oklahoma.

Sept. 14, 1973.

**418**

W. E. Green, Thomas G. Hanlon, Tulsa, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., Linda Frye, Legal Intern, for appellee.

## OPINION

PER CURIAM:

Appellant, Lee Boyd Barham, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Tulsa County, Case No. CRF–72–402, for the offense of Shooting with Intent to Kill, After Former Conviction of a Felony, his punishment was fixed at a term of not less than twenty-five (25) nor more than thirty (30) years imprisonment, and from said judgment and sentence, a timely appeal has been perfected to this Court.

Briefly stated the evidence adduced that on the evening of February 26, 1972, two uniformed Tulsa Police Officers, responded to a call to a Tulsa residence where it had been reported that a white male was in the front yard with two guns in his hands. The officers knocked on the door, which was answered by a man later identified as defendant's nephew. After a brief conversation with the nephew, defendant, for no apparent reason, reached both hands around his nephew and shot the police officers. Both officers then left the residence and were taken to a Tulsa hospital by another officer who had arrived on the scene. Approximately ten minutes later, Officer Roy Hunt arrived at the residence and proceeded to the north side of the front porch. He announced that he was a police officer and advised defendant to drop the guns which he had in each hand. Defendant's nephew stepped between defendant and the police officer, attempting to reach for the guns, at which time defendant raised his right hand and fired a shot at Officer Hunt. Officer Hunt stepped back off the porch and shortly thereafter heard someone say that they had the guns and they were both empty. Officer Hunt and other officers went into the residence and placed defendant under arrest.

Defendant testified that he was seventy-three years old, partially blind and had for the past year been in severe pain from injuries received in an automobile accident. He testified that he had been drinking excessively and steadily and also taking medication for the two weeks prior to the incident and that he could not remember anything that happened on the evening in question. He admitted a conviction of two felonies in Arkansas in 1940. Defendant's twin brother and a cab driver testified that

they observed the defendant on the evening in question and that he was highly intoxicated and acting crazy.

Six character witnesses testified in defendant's behalf. The State called in rebuttal the officers who were involved in the incident and testified that even though defendant had been drinking, that he was not so intoxicated as to not know what he was doing.

■ The first two propositions assert that the trial court erred in permitting the assistant district attorney to go into detail upon cross-examination of defendant's prior offenses and improper argument to the jury concerning the prior offenses. We concur. The record reflects that on cross-examination of defendant the following transpired:

"Q. Well, was it second degree murder or was it manslaughter, Mr. Barham?

"A. Manslaughter; gave me 21 years.

"Q. Gave you 21 years for manslaughter? Well, is second degree murder in Arkansas the same as manslaughter in Oklahoma?

"A. I imagine it is, I don't know.

"Q. Well, what were you sent down for other than manslaughter; was there a shooting?

"A. Well, if that's what it is; it was second degree or manslaughter, either one. Why, it was one of them.

"Q. Well, did you shoot somebody?

"A. That's what? [sic]

"Q. Did you shoot somebody?

"A. Yes, sir.

"Q. Who'd you shoot?

"A. My wife.

"Q. What did you shoot her for?

"A. Caught her with another man.

"Q. All right. Do you recall, Mr. Barham, telling the warden of the penitentiary in Arkansas that you shot her because you don't know what you shot her for, you don't remember what you shot her for; you had been drinking and you don't know why you shot her?

"A. No, I did not.

"MR. HOPPER: Mark this. Just mark it 14 14A, and 14B.

(State's Exhibits Nos. 14, 14A, 14B were marked for evidence.)

"MR. HALL: If the Court please, I would object to it on the same grounds that it's remote in time. There's no question about the prior conviction.

"MR. HOPPER: Goes back to an inconsistent statement, your Honor, that Mr. Barham just made on the witness stand.

"THE COURT: May I examine it, gentlemen?

"MR. HOPPER: Yes.

"THE WITNESS: I told the warden—

"THE COURT: Wait just a minute. Where is the inconsistency, Mr. Hopper? I won't read the whole thing, it would take up time, most definitely. Yes, it was an inconsistent statement to what he testified to under oath, but he was subjected to perjury—

"MR. HOPPER: At this time the State will offer State's—

"THE COURT: And I'm overruling the answer. An as to that, are you offering that?

"MR. HOPPER: At this time, the State would offer State's Exhibit No. 14 into evidence.

(State's Exhibit No. 14 was offered into evidence.)

"MR. HALL: If the Court please, I make further objection for, your Honor, the Court's ruling. I think the only part that should be admitted would be the inconsistency. It's calculated to prejudice this defendant.

"MR. HOPPER: For the purpose, your Honor, of showing inconsistent statements—

"THE COURT: No, I don't think so. He's testifying under oath and that would show the inconsistency. I will admit it; Exhibit No. 14 will be so admitted.

(State's Exhibit No. 14 was admitted into evidence.)

"MR. HOPPER: Thank you, your Honor.

"Q. (By Mr. Hopper) Mr. Barham, I have in my hand here a document, State's Exhibit No. 14, that has been admitted into evidence, which shows a commitment to the State Penitentiary in Arkansas. Now, you remember when you went there, Arkansas, don't you?

"A. Yes, sir.

"Q. To the penitentiary? Do you remember signing a document, Mr. Barham, with these words on it: Description of Crime: (Prisoner's Statement) Subject states that on February the 21st, 1940, he killed his wife with a 32–20 gun; is that correct?

"A. Yes, sir.

"Q. All right. And you further state that your wife had left you in December; is that correct?

"A. I believe so.

"Q. December of 1939, is that correct, when she left you?

"A. I think that's right.

"Q. All right. And that you had been drinking for more than two months and that you were—

"A. That's not right.

"Q. Is that right?

"A. Two weeks.

"Q. Well, okay, this states two months.

"A. Well—

"Q. And that you were drunk at the time you killed your wife, and you do not know why or when you did it.

"A. I absolutely was not drunk.

"Q. Okay. States that your wife was at her brother's home; was that correct?

"A. That's right.

"Q. Mr. H. C. Burford?

"A. That's right.

"Q. And that's where you shot your wife; is that correct?

"A. Yes, sir.

"Q. So you remember when, why, and where, you shot her, is that correct, when you shot her, don't you?

"A. That's right.

"Q. Where you shot her?

"A. Yes, sir.

"Q. And why you shot her?

"A. Yes, sir.

"Q. All right. Does this statement that you made and signed, this documented statement that the—in evidence, State's Exhibit 14, with your signature on it, is wrong?

"A. That's what?

"Q. Is this statement that I just read to you wrong?

"A. Well, I don't remember anything about the exact statement.

"Q. All right. Were you drunk when you went to the penitentiary?

"A. No, I turned out trustee the day I went there.

"Q. And how long did you say you spent?

"A. Right close to four years.

"Q. And you were sentenced to 21 years, is that correct?

"A. That's right.

"Q. So you had 17 years to go on that?

"A. That's right.

"Q. What else were you sent to the penitentiary for, Mr. Barham?

"A. Well, I accidentally shot another man, and they give me 21 years to run concurrently on both of them.

"Q. Who was that other ·man you shot?

"A. I believe his name is Gross.

"Q. And where was he, when you shot him?

"A. He was standing behind her.

"Q. Standing behind your wife?

"A. (Witness nods head.)

"Q. And so you shot him and your wife?

"A. Accidentally with him.

"Q. But you went to the penitentiary for 21 years for shooting him, is that correct?

"A. That's right, on both counts.

"Q. All right. Now, you remember that pretty well, don't you?

"A. Why sure, I remember that day, they sentenced me.

"Q. And this is 1972, and that happened in 1940, and you recall that?

"A. Yes, sir." (Tr. 112–117)

In Brown v. State, Okl.Cr., 496 P.2d 395, we reaffirmed the rule as set forth in Little v. State, 79 Okl.Cr. 285, 154 P.2d 772, wherein the Court stated:

"The court should not allow the County Attorney to go into detail concerning the crime for which the defendant had been formerly convicted, as that is a collateral matter, not relevant to the crime charged and the conviction may only be inquired into for the purpose of affecting the credibility of the witness. The conviction, the name of the court in which the conviction occurred, the nature of the crime, and the date are all pertinent factors, but the details of the crime involve extraneous matters concerning which the prosecution should not inquire unless counsel for defendant on redirect examination seeks to explain the circumstances of the alleged crime for which the former conviction was sustained in order to lessen the effect of said crime on the jury in determining the credibility to be given to the witness. * * * However, these are matters which are collateral to the issues involved; i. e., the guilt or innocence of defendant of the particular crime charged, and the trial court should be extremely cautious in its limitation of the cross-examination concerning the former convictions."

In the instant case the trial court failed to instruct the jury that the former convictions should not be considered in determining the guilt or innocence of the defendant but just as to his credibility. Inasmuch as defendant did not request such instruction, failure to so instruct standing alone does not create reversible error. See Rose v. State, Okl.Cr., 478 P.2d 1013.

The closing argument of the assistant district attorney is replete with remarks concerning defendant's prior convictions and circumstances surrounding same. We further observe that the assistant district attorney improperly attempted to cross-examine defendant concerning a charge of Assault with a Deadly Weapon in which the charges were later dismissed.

 In conclusion we observe that although the evidence is overwhelming as to defendant's guilt, that defendant was entitled to a fair and impartial trial which was denied him by the improper cross-examination by the assistant district attorney and by improper argument concerning the circumstances of defendant's prior convictions. The judgment and sentence is accordingly reversed and remanded.