**Forrest Fisher JONES, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–76–247.**

Court of Criminal Appeals of Oklahoma.

Aug. 26, 1976.

Richard A. Hoffman, App. Public Defender, Tulsa County, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Toby Mash, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Forrest Fisher Jones, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Tulsa County, Case No. CRF-75-658, for the offense of Robbery With Firearms, in violation of 21 O.S.Supp.1973, § 801. The defendant brings this timely appeal after the court sentenced him to twenty-five (25) years in the State penitentiary.

The prosecution's first witness, Jack Nail, testified that on March 22, 1975, he was employed as a pharmacist in Skagg's Drug Store; that at about 1:00 p. m. he was working alone at the counter and was rather busy. At that time a man, whom Nail identified in court as the defendant, stepped up to the counter and questioned Nail about a cure for an itch. Nail testified that the man was very insistent and unwilling to wait in line. When Nail approached the defendant he brandished a revolver and threatened to kill Nail. Defendant then ordered Nail to hand over all the Class A narcotics, which he did, and to lie down on the floor. According to Nail's testimony, Class A narcotics consist of cocaine and morphine. In addition to giving a detailed description of the defendant, Nail stated that physically there appeared to be nothing wrong with the defendant.

The prosecution's second witness was Bobbie Joe Wilkins who testified that she was present in Skagg's Drug Store on March 22, 1975, and that she observed a man engage the druggist in a conversation about a rash. The man refused the druggist's request to wait his turn and a verbal exchange then occurred after which the druggist handed a box to the man who immediately left with it. The witness identified the man as the defendant.

David Wilkins testified next and after fully corroborating the testimony of Bobbie Joe Wilkins, added that the box with which the defendant left contained bottles of pills.

Everett Crawford testified that on March 22, 1975, he was employed by the Yellow Cab Company and that while working at a cab stand across the street from Skagg's Drug Store a man approached him saying that he would need the cab in a few minutes. Upon returning the man wielded a pistol and forced Crawford to follow his directions. After traveling a few blocks the man ordered Crawford to stop. Crawford was forced to hand over the car keys, pull the radio wires, exit the cab and to walk up the street. Crawford identified the man as the defendant.

The fifth witness for the prosecution was Tony Helms, brother-in-law of the defendant. He testified that the defendant visited him on March 23, 1975, and seemed calm and in control of himself.

Michael Gay was the State's final witness. Gay stated that he was a police offi-

cer for the City of Drumright, Oklahoma, and that on March 23, 1975, he arrested the defendant. The witness stated that at the time of the arrest he believed the defendant to be suffering from drug withdrawal. During a subsequent conversation the defendant told Gay he was addicted to hard drugs and that earlier he had robbed the Skagg's Drug Store in Tulsa, Oklahoma.

At this juncture the State rested its case. Defendant's demurrer to the State's evidence was overruled and a motion for a directed verdict was denied.

The defendant took the stand in his own defense. He admitted to being addicted to hard drugs, to having used hard drugs for 26 years and to having participated in different treatment programs. Also, his testimony displayed five drug related convictions between 1953 and 1973, a forgery conviction in 1973, a 1970 conviction for robbery by force and fear. The defendant testified that from the time he was 13 years of age he had suffered at the hands of his drug hungers and that when he entered the Skagg's Drug Store on March 22, 1975, he was "bad sick" due to withdrawal. He stated the gun was not loaded, and that he had no intention of killing anyone.

The cross-examination of the defendant elicited the fact that he had been convicted of kidnapping, although he had not yet been sentenced. Over defendant's objections the prosecution also elicited the former convictions and sentences of the defendant:

Dr. Betsy Walloch, qualified by the court as an expert psychiatric witness, indicated that she had studied the defendant's previous treatment records and had personally administered a number of psychiatric tests. From this study she concluded that the defendant was in a "borderline state" and at the time of the robbery was only concerned with relieving his pain, and "he was not able to understand the results of his act." She also felt the defendant could be suffering from organic brain damage.

In rebuttal the State called Jack Nail. Nail stated that he did see bullets in the chamber of the gun with which the defendant had threatened him.

No objection was raised by either party as to the set of instructions offered and utilized by the court.

█ Defendant contends in his first and second assignments of error that it was prejudicial error to allow the District Attorney to list the various convictions, and more specifically the sentences which the defendant had previously received. While the defendant readily admits that by taking the stand he has placed his credibility at issue, and offered to the prosecution an arsenal of prior conviction weaponry, he asserts that the utilization of prior terms of sentences serve only to prejudice the defendant in the eyes of the jury. Defendant cites as authority *Barham v. State,* Okl.Cr., 514 P.2d 417 (1973), wherein the court, citing *Little v. State,* 79 Okl.Cr. 285, 154 P.2d 772 (1945), said:

" 'The court should not allow the County Attorney to go into detail concerning the crime for which the defendant had been formerly convicted, as that is a collateral matter, not relevant to the crime charged . . . ' "

Indeed, the prosecution in *Barham* did inquire as to the defendant's prior sentences, yet more importantly he delved into the facts and circumstances of the prior cases, e.g., he exposed the fact that the victim was the defendant's wife and that the defendant had been drinking. Standing alone, the references to prior sentences do not seem to be the deciding factor.

*Webb v. State,* Okl.Cr., 445 P.2d 531 (1968), is on point. The content of the cross-examination in that instance was very similar to the present controversy, with the District Attorney exposing dates of prior convictions and sentences rendered. The Court responded:

" . . . Defendant cites several cases in support of this contention of error, but all of them have to do with the State

trying to [elicit] details of the crime with which defendant was formerly convicted. Such as: 'Didn't that conviction arise out of your beating a woman with a chain'. In the instant case we fail to see where defendant was prejudiced by said cross-examination, and think it was within the rules of evidence."

To extinguish any misunderstanding we now hold that the prosecution's references to dates of former convictions and sentences imposed, during cross-examination, does not constitute error relative to improper inquiry into the details of those former convictions.

■ The third and fourth assignments or error declare that the trial court erred in failing to include in the jury instructions, a direction as to the defendant's diminished capacity. On this point it is sufficient to notice that the defendant neglected to object to the court's proposed instructions and preserve the issue. When no exception is saved as to the giving of a set of instructions and those instructions are not fundamentally erroneous, subsequent exceptions are disallowed. *Byrd v. State*, 91 Okl.Cr. 433, 219 P.2d 1027 (1950); *Whisenhunt v. State*, Okl.Cr., 279 P.2d 366 (1955).

Assuming arguendo, the existence of a timely objection, the defeat of the defendant's proposition would still prevail. This Court has long adhered to the M'Naghten Rule and has repeatedly rejected attempts to broaden or qualify it. *Suits v. State*, Okl.Cr., 507 P.2d 1261 (1973); *Gonzales v. State*, Okl.Cr., 388 P.2d 312 (1964) and, *Berryman v. State*, Okl.Cr., 283 P.2d 558 (1955). While the M'Naghten Rule has been subjected to numerous criticisms conscientiously we must maintain our position as expressed in *Dare v. State*, Okl.Cr., 378 P.2d 339 (1963), wherein the Court stated:

"The M'Naghten Rules, as a test for criminal responsibility, will remain the law in this jurisdiction until the Court of Criminal Appeals can conscientiously adopt rules, taking into consideration advances both legal and medical and the statutes of Oklahoma relating to criminal responsibility, which will better serve the orderly administration of criminal justice." (Footnote omitted)

■ Defendant, in his next assignment of error, asserts that the jury returned a coerced verdict resulting from one juror being misinformed regarding her ability to contact her children during deliberations. In support of this the defendant has introduced a letter by that juror which relates her anxiety and apprehension about her children's welfare. She relates that her vote would have been different had she known she had access to the telephone. This Court has, on numerous occasions, not only refused this type of evidence, but has condemned its use. Our convictions are clearly set forth in *Wheeler v. State*, 66 Okl.Cr. 127, 90 P.2d 49 (1939), wherein this Court stated:

" . . . It is not only against public policy, but it would be opening the doors of the courts to the practice of fraud and perjury. Litigants against whom verdicts had been rendered would be continually importuning jurors, and attempting to obtain from them statements and affidavits upon which such verdicts could be assailed. There would be no end to litigation. It would destroy the very purpose of trial by jury, and especially is this true in the trial of criminal cases. . . ."

■ In his sixth and last assignment of error the defendant urges that the sentence imposed was excessive. Defendant's contention is rooted in soil composed of defendant's first five assignments or error, each of which this Court has rejected. This Court has consistently held that the excessiveness of a sentence must be determined by examining the totality of the facts and circumstances of a case, and that unless the sentence shocks the conscience of this Court it will not be disturbed. *Thompson v. State*, Okl.Cr., 467 P.2d 523 (1970); *Johnson v. State*, Okl. Cr., 453 P.2d 390 (1969). Applying this

test, we find the defendant's assertion without merit.

For all the reasons above set forth, the judgment and sentence appealed from is *AFFIRMED*.

BRETT, P. J., and BLISS, J., concur.