**Leo JONES, Jr., Appellant,**

**v.**

**The STATE of Oklahoma, Appellee.**

**No. F–76–248.**

Court of Criminal Appeals of Oklahoma.

Aug. 30, 1976.

Donald E. Van Meter, Lawton, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., James Wadley, Legal Intern, for appellee.

## OPINION

BLISS, Judge.

Appellant, Leo Jones, Jr., hereinafter referred to as defendant, was charged in the District Court, Comanche County, Case No. CRF–75–273, for the offense of Burglary of an Automobile, After Former Conviction of Felony, in violation of 21 O.S.1971, § 1435. He was tried by a jury and convicted of the aforementioned crime. His punishment was fixed at forty (40) years' imprisonment. From said judgment and sentence a timely appeal has been perfected to this Court.

The State's first witness, Beverly Hitt, testified that she was at 1516 Ferris Street

in Lawton, Oklahoma, on March 31, 1975. This address is the home of Bernell and A. D. Graves, the parents of Ms. Hitt's roommate, who were also present. Ms. Hitt related that she and her roommate, Vickie Graves, were loading Ms. Graves' car in preparation for returning to Oklahoma City, at approximately 7:00 to 7:30 that morning. Ms. Hitt had put her purse and some clothing in the front seat of the car and had returned to the house; she had just stepped in and then for some unexplained reason turned to go back outside when she looked toward the car and saw a man halfway in the car on the passenger side. Ms. Hitt called to the man to stop what he was doing and to "stay right there." He stopped, looked at this witness, and then began to walk away. She then got into Ms. Graves' car and followed this man approximately one half block to his car. At this time Mr. Graves and Ms. Graves had made their way to the car and Ms. Graves attempted to stop the man from getting into his car. He pushed her aside, got in, and then Mr. Graves arrived with a pistol and told the man to stay there. The man then left in a 1971 to 1973 LTD Ford and this witness read off the license tag number to Mr. Graves and Vickie Graves. Ms. Hitt further stated that Officer Hawthorne of the Lawton Police Department had, by that time, arrived and they told about the theft of the purse, and he departed. Ms. Hitt later found the purse under the car and related this to the Lawton Police Department. She identified the defendant as the man she had seen on that day, and described a hat which he had been wearing.

The State's next witness, Vickie Graves, testified she heard Ms. Hitt yell "hold it right there." She then told her mother to call the police, stepped out of the house with Ms. Hitt and saw a man with the upper part of his body inside her car. When this man got out of the car and began walking towards a car parked up the street, she ran in that direction and tried to prevent him from entering his car. He pushed her

aside and got in. At this time Ms. Graves' father arrived and told the man to stay, but the man left in his car. This witness identified the defendant as the man whom she had seen on that morning. She had also gotten the tag number and soon thereafter wrote it down. This witness also identified the hat, which was then marked as State's Exhibit No. 1.

The State's third witness was A. D. Graves who related that he was in another part of the house when the incident began, and was unaware of the gravity of the situation until his wife told him to get his gun and to come out. After he came out of the house his testimony substantially coincided with that of the first two witnesses. He testified that he got the tag number and immediately wrote it down, and he stated that a later comparison with the number written by Ms. Graves showed them to be identical. This witness described the car and identified the defendant as the person whom he had seen on the morning of March 31, 1975.

Next, the State called David Hawthorne, a Lawton Police Officer. He related that he received a call to go to 1516 Ferris on an auto break-in and talked with Ms. Hitt. She gave him the tag number and a description of the suspect, both of which Officer Hawthorne put over his radio. He also initiated a "tag check" through headquarters which came back indicating the owner to be Leo Jones, 1303 Baldwin, Lawton, Oklahoma. After making out his report, Officer Hawthorne went back to patrol duties.

The State's fifth witness, Lawton Police Officer Gregg Clift, related hearing the tag number and suspect description on his radio. This officer had personal knowledge of this defendant and the automobile in question. He then proceeded to the address and called for backup. He found the vehicle at the address, noted the tag number, saw a hat similar to State's Exhibit No. 1 in the back seat, arrested the defendant and impounded the car. State's Exhibit No. 1 was then admitted into evidence.

The State's sixth witness was Mike Thompson, who was Officer Clift's backup on the date in question. His testimony substantially corroborated that of Officer Clift.

At this time the State rested and the defendant's demurrer to the evidence was overruled, as was his motion for dismissal.

Defendant's first witness, Leo Jones, Sr., testified to being the owner of the automobile described by witnesses and impounded by the police. The title to the auto, showing the address of this witness to be general delivery, was admitted into evidence. Mr. Jones testified that the defendant was at his house from approximately 7:20 a. m. to 7:40 a. m., at which time the defendant drove Mr. Jones to work, taking a route distant from the scene of the crime. On cross-examination this witness testified that this was the first time he had mentioned this incident to anyone connected with the investigation. Later on cross-examination, this exchange took place:

"Q. Mr. Jones, do you recall a hearing that was had in this matter on August the 21st—not in this matter, but in some —a matter that covered the same facts, basically. Do you recall a hearing on August the 21st upstairs in front of Judge Raburn?

"A. Yeah, I was up there." (Tr. 83) Defendant's motion for mistrial at this time was overruled.

Defendant's second witness, Carolyn Huffman, defendant's sister, related seeing the defendant at approximately 7:15 on the morning in question after phoning him at about 7:00 a. m. She testified to telling the defendant to go ahead and pick up their father and take him to work.

The defendant then took the stand in his own defense after the following exchange took place:

"MR. CALLICOTT: [Defendant's attorney] If it please the court, at this time I am not waiving my objection to the prior—in fact, the decision to take the stand was based on what has happened during this trial, that the evidence of prior convictions and that—I think because of this it is necessary for him to take the stand. I am not waiving my objection to error which may have occurred prior to this time.

\*　　\*　　\*　　\*　　\*　　\*

"BY THE COURT: I am trying to understand what your're doing here. You're not waiving any prior objection?

"MR. CALLICOTT: No." (Tr. 94)

The defendant then testified as to three prior convictions: second degree burglary, auto burglary, and, grand larceny, all in December of 1970. As to the morning in question, defendant related being called by his sister at 7:00 a. m., leaving about ten minutes later, driving by his sister's apartment, and arriving at his father's house at approximately 7:20 or 7:25 a. m., there remaining until 7:40 a. m. He then stated that he took his father to work and went back home. On cross-examination the following exchange took place:

"Q. And what were you sentenced to in the penitentiary?

"A. Seven years.

"Q. O.K. And when did you go into the penitentiary, Leo?

"A. April the 13th, 1971.

"MR. CALLICOTT: Please, the court, I object to all this line of questioning as being incompetent, irrelevant, and immaterial; further fact that we have already agreed that those are what the sentences were.

\*　　\*　　\*　　\*　　\*　　\*

"Q. O.K., Leo, when did you get out of the penitentiary?

"A. March the 27th, 1973." (Tr. 109–110)

Defendant further testified to being employed for one month immediately following his release from prison.

The State then called Officer Clift in rebuttal who testified it was due to his personal knowledge of this defendant that he

knew the address where the defendant was currently residing.

The defense then renewed their motion for demurrer, their motion for dismissal, and asked for a directed verdict, all of which were overruled.

In an in camera hearing the defendant objected to State's instruction number 4, which was a definition of the term "reasonable doubt," and this was overruled; after which, the jury was charged, retired to deliberate, and returned a verdict of guilty.

During the punishment phase of the bifurcated process required for after former conviction of a felony, defendant stipulated to his December 3, 1970, conviction of burglary of an automobile and to representation by counsel at that time.

The State's opening argument and defense counsel's argument during this stage are omitted from the record before this Court. In his closing arguments the prosecuting attorney made the following comments:

"MR. BARNETT: . . . What is Leo Jones' profession? What are we going to do to protect the community against people like him. Right now, Lawton, Oklahoma, is known as the crime capital of the world.

\* \* \* \* \* \*

". . . the people of Lawton, Oklahoma, are constantly threatened by an continuing rise in influence of crime.

. . .

\* \* \* \* \* \*

". . . Ladies and Gentlemen, the only way that—that criminal law—criminal punishment is going to serve as a deterrent is if the odds of getting caught are out of proportion to the gain or the benefit to be received . . ." (Tr. 121–122)

The jury foreman then asked a question which is as follows:

". . . if this group, . . . comes up with a—whatever appropriate sen-

tence it decides to give [the defendant], what assurance do I as an individual citizen have that he will not be on the street next week. . . . but that disturbed me when the prosecuting attorney mentioned the rehabilitation and the setting the individual as an example." (Tr. 123–124)

In answer to which, the court referred the jury to all the pertinent law that had been delivered to the jury by way of instruction.

The jury then retired for deliberation and returned a verdict of 40 years in the State penitentiary.

■ Defendant alleges, in his first assignment of error, improper cross-examination of his first witness in that the prosecution was able to bring out the fact of defendant's prior involvement with the judicial system, thereby implying prior convictions of crimes and hence placing defendant's character at issue before he had chosen to place it before the court. With this contention we cannot agree.

It can be seen by the above quoted excerpt from defendant's first witness that the implication alleged by defendant's counsel must be interpreted through innuendo, as it appears from the record that counsel for the State did not attempt to get defendant's prior convictions before the jury. Had the prosecution's manifest purpose of this line of questioning been to create prejudice in, and inflame, the minds of the jury, we could agree with this assignment. However, it is our opinion that the prosecution was attempting to challenge the credibility of this witness by showing an earlier opportunity to exculpate his son, an opportunity of which he failed to take advantage. We do not find it probable that the Assistant District Attorney would attempt to put the defendant's character at issue in this manner, and are not constrained to accept defendant's argument that he had that intent.

■ Defendant cites *Kizer v. State*, 67 Okl.Cr. 16, 93 P.2d 58 (1939), in support of his allegation of error, said case indicat-

ing that the interrogator should not ask impeaching questions unless based on facts intended to be presented in refutation of adverse answers, and that such questions should be made in good faith and not for the purpose of prejudicing the defendant. We find that defendant's trial counsel acknowledged the purpose of prosecution's questions when he stated, out of the hearing of the jury, ". . . he [the prosecutor] is going to ask [defendant's witness] why he did not testify at that hearing and tell the court that [alibi] testimony at the prior hearing." We consider such a line of testimony to be a proper element of impeachment questioning.

■ Were we to go so far as to find the questions in bad faith and for the purpose of exposing defendant's criminal past, we would rule in accordance with our holding in *Jones v. State,* Okl.Cr., 532 P.2d 462 (1975). We therein held that when a defendant elects to take the stand, thereby waiving his right to remain silent, and then testifies as to the existence of previous convictions, he then waives any error connected therewith that may have existed had he remained silent. In the principal case, defendant attempted to preserve his objection to the testimony of his first witness by verbally asserting the same, but then voluntarily and with advice of counsel took the stand, an action inconsistent with the preservation of this objection. Under such circumstances we cannot consider the objection as having been properly preserved.

■ Defendant's second assignment of error alleges the giving of an instruction as to definition of the term "reasonable doubt" is additional grounds meriting reversal of this conviction. We are at a loss to understand why trial courts in this jurisdiction continue to give such an instruction when we have condemned them from territorial days to the present. The instruction given in the principal case is identical to that given in *Young v. State,* Okl.Cr., 373 P.2d 273 (1962), wherein,

quoting from the first paragraph of the Syllabus this Court stated:

"Where the trial court has given an instruction defining reasonable doubt, such instruction will be carefully examined with reference to the whole record before the Court of Criminal Appeals, and if it should appear that the effect of such instruction is not one of injury to the defendant, we will not reverse the cause solely on the basis of such instruction."

We rule here again in accordance with *Fellows v. State,* Okl.Cr., 508 P.2d 1089 (1973); *Templer v. State,* Okl.Cr., 404 P.2d 667 (1972); and, numerous other cases that it is error for the trial judge to try to define reasonable doubt. Such error committed by the trial court forces us to delve into a review of the evidence to determine if the instruction given created such confusion and uncertainty in the minds of the jury so as to render the verdict possibly unfair and violative of defendant's right to a fundamentally fair trial.

Were this a close case, our task would be much more complicated and this error could possibly result in reversal. However, considering the weight of the evidence against the defendant, the numerous eyewitness identifications, and the severity of the jury-imposed sentence, there could have been no question in their minds as to the guilt of defendant. We therefore agree with the defendant's contention of error, but deem it harmless under the circumstances herein presented.

■ In his third assignment of error defendant alleges fundamental error in the cross-examination of defendant as to time actually served on his previous convictions. Although we cannot agree that the objected to questions were so basic as to constitute reversible error, we do consider the admission of earlier quoted material from transcript pages 109 and 110 as error. In the case of *Kimbrough v. State,* 66 Okl.Cr. 66, 89 P.2d 982 (1939), it was held not re-

versible error to permit the prosecuting attorney to cross-examine the defendant as to time spent in the penitentiary. It is our opinion here that this type of inquiry is not necessary, however, and could have possibly influenced the jurors into giving a greater punishment to defendant after they found him guilty than they would have assessed had this not been permitted into evidence.

The only conceivably relevant facts concerning prior convictions going to the issue of credibility are the fact of the conviction itself, the date received, the name of the rendering court, and the nature of the crime. *Little v. State*, 79 Okl.Cr. 285, 154 P.2d 772 (1945). *Webb v. State*, Okl. Cr., 445 P.2d 531 (1968), indicates the sentence received would be relevant, but time actually served is an unnecessary inquiry and could have here served no useful purpose beyond that of educating the jury as to the often disproportionate ratio between sentence rendered and time served. The various reasons for reduction of sentence are not properly before the jury and neither should the results of these extraneous facts be before the jury. It is not relevant as far as concerns this Court for consideration and determination of the credibility of a witness.

Defendant alleges, in his final assignment of error, prejudicial and improper argument on the part of the prosecuting attorney. With this we would agree and have earlier set forth the objectionable excerpts from pages 121 and 122 of the transcript.

In this assignment of error we need note that the closing comments objected to were made subsequent to the finding of guilt by the jury, during the penalty phase of the bifurcated system for the after former conviction. Given this circumstance, we are not disposed to disturb the jury finding of guilt.

*Pearce v. State*, Okl.Cr., 456 P.2d 630 (1969), indicates that where the record shows that what occurred in the second stage of the two-stage proceeding does not prejudice defendant's trial in the first stage relating to issues as to whether defendant committed the crime charged, the Court of Criminal Appeals will not reverse the conviction.

However, it is our opinion that these comments were intended by the prosecution to prejudice and inflame the minds of the jurors, and did do so, thereby resulting in a sentence of greater severity than would otherwise have resulted. Our opinion is reinforced by the question propounded by the jury foreman, to which we have earlier referred on pages 123 and 124 of the transcript of trial. This indicates to this Court that, because of the unwarranted comments by the prosecution, the jury was inordinately concerned with the time to be actually served, which is not within their province, and we think the severity of the sentence was affected by this concern.

We are in agreement with *Bates v. State*, Okl.Cr., 483 P.2d 1384 (1971), which held that while the right of argument contemplates liberal freedom of speech and range of discussion it is improper for counsel in closing argument to mislead the jury or *inject matters not supported by the evidence* and such improper argument will support modification of the sentence where evidence of guilt is clear and convincing.

We find this case to be comparable with *Hale v. State*, Okl.Cr., 453 P.2d 302 (1969), wherein the prosecutor made inflammatory and prejudicial argument after the penalty phase which we found to contribute to a greater term of imprisonment rendered by the jury than justified by facts and circumstances. Accordingly, we will take similar action and modify the sentence from forty (40) to twenty (20) years' imprisonment. We can conscientiously say that under the facts and circumstances of this case the sentence is so excessive as to shock the conscience of this Court.

The judgment and sentence is, accordingly, *MODIFIED* to a term of twenty (20) years' imprisonment and as so modified judgment and sentence is otherwise *AFFIRMED*.

BRETT, P. J., and BUSSEY, J., concur.