Herman Eugene KOPECEK, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–76–543.

Court of Criminal Appeals of Oklahoma.

Jan. 24, 1977.

Reid K. Mayfield, Atoka, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Alan Foster, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

The appellant, Herman Eugene Kopecek, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Atoka County, with the crime of Escape from a State Penitentiary, in violation of 21 O.S.1971, § 443. The jury fixed his punishment at four (4) years in the state penitentiary and from this judgment and sentence a timely appeal has been filed.

The relevant evidence presented at trial may be summarized as follows:

Lowell Reasor testified that he was the Records and Classification Supervisor at the McLeod Honor Farm. Mr. Reasor also testified that the defendant was committed to the Oklahoma State Penitentiary on December 20, 1974, on a conviction of Grand Larceny from Greer County, Oklahoma. The defendant was transferred to the McLeod Honor Farm on January 10, 1975. On cross-examination this witness testified that on January 15, 1975, the defendant was assigned the upkeep of the cell house in which his bed was located.

Pete Anderson testified that he was Chief of Security at the McLeod Honor Farm. Mr. Anderson testified that he was personally acquainted with the defendant and that on July 4, 1975, the defendant was an inmate at the farm. He further stated that at no time had he personally given the defendant permission to leave the farm on July 4, 1975, nor had he authorized any of the supervisory personnel to give the defendant permission to leave the farm.

Ray Eastridge testified that on July 4, 1975, he was employed as a Corrections Officer at the McLeod Honor Farm. He further testified that he had driven his own 1963 white and green Chevrolet pickup to the Farm at 11:30 p. m. on July 4th and parked it approximately thirty yards from the building. Mr. Eastridge stated that he removed the keys from his truck. He had been in the building for approximately 10 to 15 minutes when he was advised that his pickup had been taken. The witness then went outside and saw his pickup being driven off the grounds. He could not identify the occupants but stated that there were two people in the vehicle. Mr. Eastridge testified that he had not given anyone permission to drive his pickup that night.

Bill Reynolds testified that he was a Corrections Officer at the McLeod Honor Farm on July 4, 1975. Mr. Reynolds testified that on that date, he and R. J. Reynolds, his nephew went on road patrol duty outside the Farm at about 6:00 p. m. The witness stated that while on duty he and R. J. Reynolds observed a pickup coming from the compound yard. Mr. Reynolds testified that he and R. J. Reynolds shined their spotlights into the cab of the pickup in an attempt to flag it down. As the vehicle passed, Mr. Reynolds saw the defendant, Herman Eugene Kopecek sitting on the passenger's side of the pickup, which was being driven by another inmate.

The witness and R. J. Reynolds pursued the vehicle for approximately five miles, when it stopped after blowing a rear tire. Both occupants of the pickup were then taken into custody. Mr. Reynolds identified the defendant, Herman Eugene Kopecek as one of the two men in the pickup. On cross-examination the witness admitted that it was very dark on the night in question and that there was no illumination in the immediate area.

The State then rested and the defendant's demurrer to the evidence was overruled.

Dr. Walter Reed testified on direct examination by the defendant that he was the Medical Officer for the Vocational Training Center at Stringtown and McLeod Honor Farm. Dr. Reed stated that he was familiar with the defendant because the defendant had visited him complaining about pain in his knees. The witness further testified that there had been a delay in obtaining medication for the defendant.

Lt. Ralph England testified on direct examination by the defendant that he was a Corrections Officer at the McLeod Honor Farm and was so employed on July 4, 1975. He further testified that sometime between 11:30 and 12:00 p. m. on that date he heard a vehicle start up and saw it leaving the compound.

Vernon Eastridge testified that he was a Corrections Officer at the McLeod Honor Farm and was so employed on July 4, 1975. At approximately 11:30 p. m. Mr. Eastridge stopped about half a mile from the compound to speak to Bill and Bob Reynolds. While speaking to Bill and Bob Reynolds, the pickup referred to in the testimony of prior witnesses, passed by the witness, and he assisted Bill and Bob Reynolds in the pursuit and apprehension of the occupants.

The defendant next testified in his own behalf. He stated that he was 28 years old and had been convicted of three prior felonies. He admitted being one of the occupants in the pickup. The balance of the defendant's testimony concerned his knee injury and the history of medical treatment he had received for that injury. On cross-examination the defendant admitted to having violated the terms of the parole which he had received after a prior felony conviction.

At this point the defendant rested. The State then called Lowell Reasor in rebuttal. He testified that to his knowledge the defendant made no request to see the doctor other than on regular sick call days.

For his first assignment of error the defendant alleges that the trial court erred in improperly allowing the Assistant District Attorney to cross-examine the defendant as to a parole violation not connected with the case on trial. The alleged error complained of occurred during the following exchange:

"Q. What were you sentenced to in 1967?

"A. Three (3) years in the State penitentiary.

"Q. Did you go to the penitentiary?

"A. Yes sir.

"Q. Did you ever make parole?

"A. Yes sir.

"Q. When was the next time you returned to the penitentiary?

"BY MR. MAYFIELD: Your Honor, I would object to that. He can go over his convictions, but as far as the other final aspects of this, I don't think he's entitled to—

"BY THE COURT: Well, I will allow the question that he just asked.

"Q. When did you next return to the penitentiary?

"A. In sixty-nine (69), sir.

"Q. Was that a conviction?

"A. It was a parole violation.

"BY MR. MAYFIELD: Your honor, we would move to strike that. He is entitled to impeach him. I'm not—we haven't made any secret of the fact that this man is a convicted felon and has had previous felons, (sic) but I don't think any matter with relation to parole violations one way or the other is permissible and I would respectfully, number one, move the Court for a mistrial and, number two, in the event the mistrial would not be granted that the Jury be admonished to disregard the testimony as improper cross examination.

"BY MR. MILLSPAUGH: Your Honor, I simply asked him when he returned to the penitentiary again.

"BY THE COURT: The question has been asked and answered and I will Overrule your Motion for Mistrial." (Tr. 82–83)

The defendant cites *Barham v. State*, Okl.Cr., 514 P.2d 417 (1973), for the proposition that it is prejudicial error for the prosecutor on cross-examination to ask the defendant detailed questions concerning the underlying circumstances of his prior convictions. We think the facts in this case are clearly distinguishable from those in the *Barham* case. That case concerned a prosecution for Shooting with Intent to Kill, After Former Conviction of a Felony. The prosecutor cross-examined the defendant about his prior convictions for manslaughter which had occurred more than 30 years before the charge in question. He asked

the defendant who he (the defendant) had shot, where the shootings took place, why the victims were shot, how long the defendant was in prison and numerous other questions which had little if any relevance to the issue at hand.

Our opinion in *Robinson v. State*, Okl.Cr., 507 P.2d 1296 (1973) is much more in point with the present case. The defendant there alleged prejudicial error when the Assistant District Attorney cross-examined him as to the revocation of his parole. The testimony was as follows:

"'Q. Then in 1959, five years after 1954. Mr. Robinson, your parole was revoked for the commission of another crime, wasn't it?

"'A. No sir, it was not.

"'Q. It was not? And did you not return to the Huntsville Penitentiary?

"'A. My parole was revoked, but not for a conviction of a felony.

"'Q. What was your parole revoked for? *Was it the crime of Indecent Exposure?*

"'A. No sir, it was not.'" (Emphasis added. Tr. 94).

The Court in the *Robinson* case went on and stated:

"The purpose of cross-examining a defendant regarding former convictions is to affect his credibility as a witness. As long as the questioning does not place undue emphasis on the prior convictions and consequently adversely affect the jury, then such questioning will not be grounds for a reversal. Accordingly, we find this proposition meritless."

In the case at bar the defendant testified on direct examination that he was convicted of Forgery in 1967 and "did three (3) years in the penitentiary . . ." He opened up the subject of his prior convictions, and to the extent that he wasn't completely candid as to his past wrongdoing, he could be cross-examined to show the jury that they had not given a complete account of his criminal record. *Fite v. State*, Okl.Cr., 526 P.2d 956 (1974). For these reasons we hold that the defendant's first assignment of error is without merit.

The defendant's second assignment is that the sentence of four (4) years is excessive in light of the evidence presented and the fact that the passion of the jury was inflamed due to the improper cross-examination complained of in the defendant's first assignment.

Because we have already upheld the validity of the State's cross-examination, we will only deal with the question of excessive sentence. This Court has stated on numerous occasions that we will not modify a sentence, unless under all the facts and circumstances, we can conscientiously say that the sentence imposed shocks our conscience. *Hayes v. State*, Okl.Cr., 550 P.2d 1344 (1976), *La Rue v. State*, Okl.Cr., 404 P.2d 73 (1965).

Since the sentence imposed was within the statutory limits, the evidence of guilt was overwhelming and after a thorough search of the record we are unable to find any error, which would justify modification we cannot say that the sentence imposed shocks our conscience. The defendant's second assignment of error is without merit. Therefore the judgment and sentence appealed from is *AFFIRMED*.

BRETT, P. J., concurs in results.

BLISS, J., concurs.