1998 OK CR 54

**Gary Roland WELCH, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

No. F–96–692.

Court of Criminal Appeals of Oklahoma.

Oct. 5, 1998.

Rehearing Denied Dec. 2, 1998.

Joe P. Robertson, Tulsa, for Appellant at trial.

Ben Loring, District Attorney, Alicia Littlefield, Assistant District Attorney, Miami, for the State at trial.

David Autry, Oklahoma City, for Appellant on appeal.

W.A. Drew Edmondson, Attorney General of Oklahoma, Robert Whittaker, Assistant Attorney General, Oklahoma City, for the State on appeal.

## OPINION

LUMPKIN, Judge:

¶1 Appellant Gary Roland Welch was tried by jury and convicted of First Degree Murder (21 O.S.1991, 701.7), Case No. CRF–94–302, in the District Court of Ottawa County. The jury found the existence of three aggravating circumstances and recommended the punishment of death. The trial court sentenced accordingly. From this judgment and sentence Appellant has perfected this appeal.[1]

¶2 Appellant and co-defendant Claudie Conover were convicted of the first degree murder of Robert Hardcastle. The District Court granted a motion for severance and Appellant was tried approximately ten (10) months after co-defendant Conover. The facts of this case are set forth in *Conover v. State*, 933 P.2d 904 (Okl.Cr.1997).

---

1. Appellant's Petition in Error was filed in this Court on September 6, 1996, and an Amended Petition in Error was filed March 17, 1997. Appellant's brief was filed February 24, 1997. The State's brief was filed June 24, 1997. The case was submitted to the Court July 8, 1997. Oral argument was held October 21, 1997.

## PRE–TRIAL ISSUES

¶ 3 In his sixth assignment of error, Appellant contends the trial court never acquired subject matter jurisdiction over the case as the Information failed to allege all of the elements of malice murder; specifically, the element of "malice aforethought." The felony Information filed against Appellant read in pertinent part:

## MURDER IN THE FIRST DEGREE
TITLE 21—701.7

■ ... That said defendants, on the day and year aforesaid, in the County and State aforesaid, while acting in concert, each with the other, did unlawfully, willfully, and feloniously, without authority of law, and with a premeditated design to effect the death of one Robert Hardcastle, a human being, did then and there kill one Robert Hardcastle by means of a knife having a sharp and pointed blade, and a broken bottle which was sharp, with which the said defendants did cut, slash and stab the body of the said Robert Hardcastle, causing mortal wounds in the body of the said Robert Hardcastle from which mortal wounds the said Robert Hardcastle did languish and die, ... (O.R.1).

¶ 4 This is the same felony Information filed against co-defendant Claudie Conover. We have previously found this Information sufficiently provided notice of the charge against the defendant and apprised him of what he must defend against at trial. *Conover*, 933 P.2d at 909–10. Appellant has not persuaded us to alter that view. We have also previously rejected Appellant's additional claim that *Parker v. State*, 917 P.2d 980, 986 (Okl.Cr.1996) should not be applied to his case. *Id.* at 910. Accordingly, this assignment of error is denied.

### FIRST STAGE TRIAL ISSUES
#### A.

■ ¶ 5 In his first assignment of error, Appellant contends he was denied a fair trial by the improper admission of hearsay testimony. Larry Davis testified at trial that while he and co-defendant Conover were visiting, they heard "banging" noises coming from the victim's half of the duplex. Davis testified that he commented to his wife and Conover that he hoped the victim was "winning his wrestling match." Conover said something to the effect that "someone's getting a spanking over a deal." The State sought to admit Conover's statement as that of a co-conspirator under 12 O.S.1991, 2801(4)(b). The trial court initially sustained Appellant's objection finding the evidence insufficient to support the existence of a conspiracy. The State reserved the right to recall the witness after it had established the existence of the conspiracy. (Tr. Vol.5, pp. 1162–64). Near the end of its case-in-chief, the State again attempted to introduce the statement. This time the court admitted the statement and overruled Appellant's objections finding the existence of a conspiracy had been established and that the statement was made during and in furtherance of the conspiracy.

■ ¶ 6 Now on appeal, Appellant asserts the trial court ruling was error as the evidence did not support the finding of a conspiracy. We agree. A statement which is offered against a party and made by his co-conspirator during the course and in furtherance of their conspiracy is admissible and is not hearsay. 12 O.S.1991, 2801(4)(b)(5). *See also Omalza v. State*, 911 P.2d 286, 295–96 (Okl.Cr.1995). A co-conspirator's statements satisfy the requirements of reliability and are admissible as non-hearsay substantive evidence only where the trial court finds: [1] a conspiracy existed; [2] both the defendant and the alleged co-conspirator declarant were parties to the conspiracy; [3] the statements were made during the duration of the conspiracy; and [4] the statements furthered the goals of the conspiracy. *Id.* at 296. The conspiracy must be proven by a preponderance of evidence and the trial court may consider the alleged hearsay statements in reaching its decision. *Id.* "In a conspiracy prosecution, the critical inquiry is whether the circumstances, acts, and conduct of the parties are of such a character that the minds of reasonable men may conclude therefrom that an unlawful agreement exists." *State v. Davis*, 823 P.2d 367, 370 (Okl.Cr.1991) quoting *United States*

*v. Kendall,* 766 F.2d 1426, 1431 (10th Cir. 1985).

¶ 7 Here, there was no evidence of an agreement or joint plan to kill the victim, nor was there evidence that Conover's statement was made during or in furtherance of that plan. At most, the evidence showed joint action between the two defendants in running down the victim and beating him to death, conduct which occurred after Conover's statement was made. Therefore, we find the trial court erred in admitting the statement under the co-conspirator exception.

¶ 8 However, we do not find the statement itself inadmissible. Under 21 O.S.1991, 2803(1) a statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter is exempted from the hearsay prohibition and is admissible as a present sense impression. Conover's statement was made immediately upon hearing the noise coming from next door and offered an explanation for that noise. Therefore, any error in admitting the statement under the co-conspirator exception was harmless as the statement was properly admissible as a present sense impression. Further, as the comment falls under a well established exception to the hearsay rule, there was no violation of Appellant's right of confrontation. Accordingly, this assignment of error is denied.

**B.**

▮ ¶ 9 In his second assignment of error, Appellant asserts the prosecutor improperly inquired into the details of his prior convictions and infringed upon his right to silence when he asked why Appellant had not come forward at Conover's trial "to help your buddy out." Initially, we review only for plain error as no objection was raised by Appellant to these inquiries.[2] *Simpson v. State,* 876 P.2d 690, 698 (Okl.Cr.1994).

▮ ¶ 10 Cross-examination as to prior convictions is allowed for the purpose of impeaching a defendant's credibility. 12 O.S. 1991, 2609. However, that inquiry is limited and the prosecutor may not go into the details of the convictions. *Little v. State,* 79 Okl.Cr. 285, 154 P.2d 772 (1945). *See also Britt v. State,* 721 P.2d 812, 816 (Okl.Cr. 1986). Any error in the prosecutor's inquiry in this case must be deemed invited error as Appellant initially raised the issue during his direct examination. Appellant testified on direct examination that he had spent "some time" in the penitentiary, that he was released from the reformatory at Granite in March of 1988, and that he had spent only his last ninety (90) days of a twenty-one (21) month sentence at Granite. The prosecutor's inquiry on cross-examination into the offense for which Appellant was serving time at Granite, the details of that offense and other prior convictions was invited. This Court has long held that an appellant cannot complain of error which he has invited, and that reversal cannot be predicated upon such error. *Pierce v. State,* 786 P.2d 1255, 1259–60 (Okl.Cr.1990); *Dutton v. State,* 674 P.2d 1134, 1139 (Okl.Cr.1984).

▮ ¶ 11 Also during cross-examination, the prosecutor inquired as to whether Appellant was aware that co-defendant Conover had been charged with first degree murder, whether he had been subpoenaed as a witness for Conover's trial and whether Appellant had "come forward in that case and testify as to what transpired to help your buddy out."

▮ ¶ 12 Reference to Appellant's post-arrest silence, albeit used solely for impeachment purposes on cross-examination, is a violation of Appellant's rights under the due process clause of the Fourteenth Amendment to the United States Constitution. *Wood v. State,* 748 P.2d 523, 526 (Okl.Cr. 1987). However, such violation is subject to a harmless error analysis. *Id.* Appellant testified on re-direct that he was subpoenaed to testify at Conover's trial but was never called

2. In footnote number 18 of his appellate brief, Appellant asserts, in the alternative, that trial counsel's failure to object to the inquiries in question constituted ineffective assistance of counsel. This reference is insufficient to raise the issue of ineffective assistance of counsel and we therefore do not address that claim at this time.

to testify. Considering that testimony and the substantial evidence of Appellant's guilt, we conclude the error was harmless beyond a reasonable doubt. Accordingly, this assignment of error is denied.

### C.

¶ 13 Appellant complains in his third assignment of error that a demonstration re-enacting the crime was reversible, prejudicial error. He claims the demonstration lacked relevance and that the danger of unfair prejudice far outweighed any probative value.

¶ 14 State's witness Donnie Nading testified that he observed the assault on the victim as he drove past the area. He testified to seeing Appellant and another man attack the victim and to observing Appellant stab the victim. With Mr. Nading's assistance and that of Officer Pendley, the prosecutor attempted to demonstrate the assault. Over Appellant's objections, the court allowed the prosecutor to take the position of the victim, Officer Pendley to take the position of co-defendant Conover and Mr. Nading to be Appellant.

¶ 15 This Court has previously upheld demonstrations which were based on the evidence presented at trial and not theatrical demonstrations. *Brown v. State*, 777 P.2d 1355, 1358 (Okl.Cr.1989) (prosecutor used a police officer during closing argument to illustrate the position of the decedent seated in a chair when shot in the neck and back by appellant.) *See also Woodruff v. State*, 846 P.2d 1124, 1136 (Okl.Cr.), *cert. denied*, 510 U.S. 934, 114 S.Ct. 349, 126 L.Ed.2d 313 (1993) (police officer demonstrated use of the garrotte on the neck of an Assistant District Attorney).

¶ 16 Here, the demonstration was relevant in illustrating the events which occurred in the ditch as Mr. Nading watched from his van. Testimony concerning these events was contradictory as Appellant claimed he acted in self-defense and denied stabbing the victim. The demonstration was brief and not so prejudicial as to outweigh the probative value of helping the jury understand the State's theory of the commission of the offense and in particular, Appellant's role in the offense. Therefore, we find no error in the demonstration.

### D.

¶ 17 In his fourth assignment of error, Appellant challenges the jury instructions and finds error in the trial court's failure to give instructions on the lesser included offenses of second degree depraved mind murder and first degree manslaughter by means of a dangerous weapon. An instruction on second degree murder was requested by Appellant but refused by the trial court finding the evidence insufficient to support such an instruction. Appellant's request has preserved the issue for appellate review.

¶ 18 Initially, second degree depraved mind murder is not a lesser included offense of first degree malice murder. *Willingham v. State*, 947 P.2d 1074, 1081 (Okl.Cr. 1997). Therefore, the trial court did not err in refusing to give the instruction.

¶ 19 Appellant's complaint about the lack of an instruction on first degree manslaughter by means of a dangerous weapon is not well taken as the record shows that such an instruction was given. (Instruction No. 25, O.R.404).

¶ 20 Further, Appellant argues that by failing to instruct the jury on lesser included offenses, the trial court failed to provide the jury with the option of convicting him of a non-capital offense as required by *Schad v. Arizona*, 501 U.S. 624, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991) and *Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980). Neither *Beck* nor *Schad* require that a jury in a capital case be given a third, non-capital option where the evidence absolutely does not support that option. Regardless, the jury in this case was given a third, non-capital option of first degree manslaughter, as well as the alternative sentences of life imprisonment and life without parole. Therefore, the jury was not prevented from considering a non-capital option. Accordingly, this assignment of error is denied.

## SENTENCING STAGE ISSUES

### A.

¶ 21 In his seventh assignment of error, Appellant challenges the victim impact evidence. In the first of his several arguments, Appellant asserts admission of the victim impact evidence was in plain violation of the Eighth and Fourteenth Amendments of the United States Constitution and outside the scope of 22 O.S.1991, 984.

¶ 22 This argument has previously been rejected in *Ledbetter v. State*, 933 P.2d 880, 889–90 (Okl.Cr.1997) and *Cargle v. State*, 909 P.2d 806, 828 (Okl.Cr.1995). *Cargle* sets out the basis the United States Supreme Court has utilized to find the Eighth Amendment is not violated by victim impact evidence and that the Fourteenth Amendment has the potential to be implicated if appropriate restrictions are not placed on victim impact evidence.

■■■ ¶ 23 This Court has held victim impact evidence admissible as long as it is "restricted to the 'financial, emotional, psychological, and physical effects,' or impact, of the crime itself on the victim's survivors; as well as some personal characteristics of the victim." *Ledbetter*, 933 P.2d at 889–90 quoting *Cargle*, 909 P.2d at 828.

> [I]ts use should be limited to showing how the victim's death is affecting or might affect the victim's survivors, and why the victim should not have been killed . . . .; victim impact evidence should be restricted to those unique characteristics which define the individual who has died, the contemporaneous and prospective circumstances surrounding that death, and how those circumstances have financially, emotionally, psychologically, and physically impacted on members of the victim's immediate family. *Id.*

The opinion of a member of the victim's immediate family regarding a recommended sentence has also been held admissible. *Hain v. State*, 919 P.2d 1130,1144 (Okl.Cr. 1996). However, such opinion will be viewed by this Court with a heightened degree of scrutiny. *Willingham*, 947 P.2d at 1086.

¶ 24 Turning to the specific victim impact evidence introduced in this case, it is substantially the same as that admitted in *Conover*. 933 P.2d at 918–19, n. 6. Trial counsel in the present case did not object to the introduction of the victim impact evidence generally but did raise contemporaneous objections to the victim impact statements arguing they went beyond the statutory scope of victim impact evidence. The objections were overruled.

¶ 25 In *Conover*, we found the victim impact evidence weighed the scales too far in favor of the prosecution. *Id.* We found such statements as the victim was "butchered like an animal", and that two men "butchered him" have no place in a victim impact statement. *Id.* at 920.

> Assuming statements like this are not prohibited under the rules of hearsay, such statements are inflammatory descriptions designed to invoke an emotional response by the jury. Such comments do not fall under the statutory provision permitting statements on the manner in which the crime was perpetrated. These type of statements are emotionally charged personal opinions which are more prejudicial than probative.

*Id.* (footnote omitted). We further stated:

> [c]omments about the victim as a baby, his growing up and his parents' hopes for his future in no way provide insight into the contemporaneous and prospective circumstances surrounding his death; nor do they show how the circumstances surrounding his .death have financially, emotionally, psychologically, and physically impacted a member of the victim's immediate family.

*Id.* at 921. However, we also found several statements were properly admitted including Mrs. Hardcastle's reference to taking care of the victim's twin grandsons, nursing them through nightmares and answering their questions about their father. This evidence was found relevant to show the emotional, psychological, and physical impact of the victim's death. *Id.* The effect of the improperly admitted evidence was not addressed in light of the need to remand the case for resentencing due to the denial of the appellant's right to confrontation. *Id.* The same statements found improper in *Conover* are present in

this case. The effect of this improperly admitted evidence will be addressed in the Mandatory Sentence Review.

¶ 26 Appellant also complains the victim impact evidence was replete with hearsay and the witnesses' testified to things of which they had no personal knowledge. Specifically, Appellant directs us to references to his criminal record and that he planned the homicide. The Evidence Code prohibition of hearsay applies in second stage proceedings in capital cases and unless a hearsay statement falls within one of the recognized exceptions to the hearsay rule, it is not admissible in second stage proceedings. *Ledbetter*, 933 P.2d at 895. In *Conover*, we said that Mrs. Hardcastle's reference to appellant's prior conviction was error if she had no personal knowledge of the prior conviction and because such a statement did not show the financial, emotional, psychological, and physical effects of the victim's death nor is it relevant to the circumstances surrounding the victim's death. 933 P.2d at 922. We find the same comment error in this case, the effect of which will be discussed in the Mandatory Sentence Review.

¶ 27 Appellant further argues that victim impact evidence functions as "super-aggravating evidence." This claim was rejected in *Cargle* wherein we found evidence supporting an aggravating circumstance and victim impact evidence are different kinds of evidence addressing two separate purposes. 909 P.2d at 828, fn. 15. Appellant has not persuaded us to reconsider the issue.

¶ 28 Appellant also asserts the victim impact evidence was inadmissible due to the trial court's failure to conduct an *in-camera* hearing on the evidence as required by *Cargle*, his failure to receive adequate notice of the evidence, the witnesses' improvising on the stand and failure to adhere to their written statements, and the giving of their testimony in a narrative instead of a question and answer format.

¶ 29 In *Cargle*, this Court held that the State should file a Notice of Intent to Produce Victim Impact Evidence, detailing the evidence sought to be introduced; and an *in-camera* hearing should be held by the trial court to determine the admissibility of the evidence as it relates to 12 O.S.1991, 2403. 909 P.2d at 828. The evidence sought to be introduced should be limited to the evidence listed in the prosecutor's notice filed before trial, and, although not required, the trial court may wish to consider whether a question-and-answer format may be a preferable method of controlling the way relevant victim impact evidence is. presented to a jury. *Id.*

¶ 30 In the present case, approximately one year before trial, the State filed a Notice of Victim Impact Statement listing the three witnesses who testified as well as seven other witnesses who did not testify, with brief summaries of their testimony included. The State also provided Appellant with the written statements prepared by the three witnesses who did testify. Although the record does not reflect when these written statements were provided to the defense, no objection was raised on the basis of lack of notice. Appellant was provided sufficient notice of the victim impact evidence. *See Ledbetter*, 933 P.2d at 894.

¶ 31 An *in-camera* hearing on the admissibility of the evidence was not held but when the victim impact evidence was met with a defense objection at trial, all of the evidence offered by the State was admitted. The failure of the trial court to hold the *in-camera* hearing was error. However, it is a trial error subject to a harmless error analysis. *Bartell v. State*, 881 P.2d 92, 98–99 (Okl.Cr.1994).

¶ 32 The purpose of the *in-camera* hearing is to allow the trial judge the opportunity to rule on the admissibility of the victim impact evidence prior to its presentation to the jury. The defense objections in this case gave the trial court that same opportunity and all of the evidence offered by the State was admitted. Therefore, the failure to make that same ruling prior to trial in an *in-camera* hearing is harmless error. However, when the trial court fails to follow the procedures for an *in-camera* hearing it opens up the potential for reversible error if inadmissible evidence which creates prejudice is presented to the jury. Fortunately we do not have that problem here.

**1244** ▮

¶ 33 The three witnesses who testified did so in a narrative form. We find no error as *Cargle* provided that either a question and answer format or a narrative format is permissible. 909 P.2d at 828. The option of using either method to present victim impact evidence makes the fact that a testifying witness added to his or her written statement inconsequential. Here, Ed Hardcastle, the victim's father, stated on the stand that he had heard the testimony concerning Appellant's attempt to kill a witness and her children and he wondered if his grandchildren had been with their father at the time of the homicide if they would have been butchered. He also commented that Appellant showed no remorse for what he had done, that his lawyer would ask for a reduced sentence, for mercy, but that his son was shown no mercy. The fact that his comments were not included in his written statement does not make them improper. It is the content of his comments which determine their admissibility.

¶ 34 Looking to the statements themselves, the comment to "look at a man that shows no remorse for what he's done" can be described as proper characterization and opinion of the defendant. *Ledbetter*, 933 P.2d at 890. However, the rest of the statements were not comments on the 'financial, emotional, psychological, and physical effects,' or impact, of the crime itself on the victim's survivors, but emotionally charged personal opinions which were more prejudicial than probative. Their admission was error, the effect of which will be discussed in the Mandatory Sentence Review.

¶ 35 Finally, Appellant challenges the jury instruction on victim impact evidence arguing it failed to limit and channel the jury's discretion in evaluating victim impact evidence. The instruction given in this case was that approved in *Cargle*, 909 P.2d at 828–29. Appellant has not persuaded us to reconsider our endorsement of this instruction. Accordingly, this assignment of error is denied.

**B.**

¶ 36 Appellant contends in his eighth assignment of error that the trial court's failure to give an instruction listing specific mitigating evidence was error in violation of the Eighth and Fourteenth Amendments. Appellant argues the absence of such an instruction prevented the jury's full consideration of the specific mitigating circumstances offered. Appellant's submission to the trial court of a written requested instruction on the subject has preserved the issue for appellate review.

¶ 37 Appellant asserts this Court has recognized that an instruction of the type offered by him is appropriate and should be given when requested, citing as authority "Notes on Use" to Oklahoma Uniform Jury Instructions–Criminal (OUJI–Cr) (2nd) 4–79. However, this Court also recognizes that the second edition OUJI–Cr did not go into effect until approximately four (4) months after Appellant's trial and we have not applied them retroactively. 12 O.S.Supp.1996 577.2. Appellant offers no other authority in support of his argument that the failure to give such an instruction is error. Rather, he relies on *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989) and other cases which find that a court may not give instructions which preclude or inhibit the jury's evaluation of mitigating evidence.

¶ 38 The present case is distinguishable from *Penry* in that we are not faced with instructions which improperly limit the jury's consideration of certain evidence but with the absence of an instruction specifically directing their consideration of certain evidence. The absence of that type of instruction in light of the instructions which were given during the second stage did not deny Appellant a fair sentencing proceeding. The record shows the jury was instructed that mitigating circumstances were those which, in fairness and mercy, may be considered as extenuating or reducing the degree of the defendant's moral culpability or blame and that the determination of what are mitigating circumstances was solely for the jury to resolve under the facts and circumstances of the case. (Instruction No. 7, O.R. 432). The jury was also instructed that before it could impose the death sentence it must first find an aggravating circumstance beyond a reasonable doubt and that the aggravating cir-

cumstance must outweigh the mitigating evidence. Under these instructions, we find the jury was not prevented from considering the evidence nor is there a reasonable likelihood the jury failed to consider the evidence offered in mitigation. Therefore, the failure to give an instruction specifically listing the mitigating evidence does not warrant reversal or modification of sentence.

### C.

¶ 39 In his ninth assignment of error, Appellant contends the trial court erred in failing to give an instruction explaining the difference between life imprisonment and life without parole as requested by the jury in two notes sent out during deliberations. Appellant asserts that under 22 O.S.1991 894 the court had an affirmative duty to provide further guidance to the jury and the failure to do so resulted in prejudicial error.

¶ 40 Section 894 provides that when the jury has a question after it has started deliberations, they must be conducted into open court to receive their response in the presence of the defendant and all counsel concerned. The record does not reflect that the jury was brought into the courtroom to receive the court's response.

¶ 41 Initially, Appellant asks this Court to presume prejudice because the record is silent as to the court's actions upon receiving the questions. Only the written versions of the jury's questions and the court's responses have been included in the record. There is no indication that Appellant objected to the court's method of responding to the questions. It is well established that it is Appellant's burden to ensure a sufficient record is provided to this Court to determine the issues raised. *Hill v. State*, 745 P.2d 410, 411 (Okl.Cr.1987). This Court does not assume error from a silent record. *Id.* Further, absent an objection as to the court's failure to follow section 894, the issue is not properly preserved for appellate review. *Brown v. State*, 777 P.2d 1355, 1359 (Okl.Cr. 1989).

¶ 42 Therefore, reviewing only for plain error, this Court has found a violation of 22 O.S.1991, 894, in failing to call the jury into the courtroom in the presence of, or after notice to, the district attorney and defense counsel, error subject to harmless error review. Such a violation can be harmless in the absence of any prejudice to the defendant. *Fisher v. State*, 736 P.2d 1003, 1007 (Okl.Cr.1987); *Givens v. State*, 705 P.2d 1139, 1142 (Okl.Cr.1985); *Wilson v. State*, 534 P.2d 1325, 1327 (Okl.Cr.1975).

¶ 43 Here, the jury asked "Can life without parole be reduced by appeal or pleas in the future" and "Has anybody ever be (sic) released with the sentencing of life without parole." The court's response to both questions was "I am not allowed to answer this question." Appellant asserts the judge should have instructed the jury that the sentence of life without possibility of parole means exactly what it says and that the jury is to presume that any sentence given to Appellant would be carried out according to the plain meaning of that sentence. He argues that under *Johnson v. State*, 928 P.2d 309, 319 (Okl.Cr.1996) the trial courts should be permitted to fully define what the sentence means to allay juror confusion or misunderstanding.

¶ 44 In *Johnson*, the jury asked "[w]e need to know! Is life without parole firm— Does it mean he can never be paroled?" The trial court responded "It is inappropriate for you to consider the question asked." *Id.* at 319. This Court found the trial court's response error as it was a misstatement of law, citing to *Mayes v. State*, 887 P.2d 1288 (Okl. Cr.1994), that the law is clear, the jury must consider the distinctions between life, life without parole and death as it reaches the sentencing decision. However, this Court found such error did not require reversal as prior case law made it clear that:

... [i]n this jurisdiction the jury is not to be told of the inner workings of the parole system, even when it must compare two life sentences: one with the possibility of parole, and one without the possibility of parole. In none of these cases [*McGregor v. State*, 885 P.2d 1366 (Okl.Cr.1994); *McCracken v. State*, 887 P.2d 323 (Okl.Cr. 1994) and *Mayes v. State*, 887 P.2d 1288 (Okl.Cr.1994) ] did the trial judge give a responsive answer to the jury's question.

Likewise, the judge's answer in this case was non-responsive. The ultimate effect of all of these responses was to force the jurors back to the plain language of the instructions. From the standpoint of what the jurors must do following the trial judge's response, we find no meaningful behavioral difference flowing from the approved responses in *McCracken, McGregor,* and *Mayes* which could be summarized as, "I am not going to answer that question", and the response in the case before us which could be summarized as, "Don't ask." We therefore find the trial judge's response in this case to be harmless beyond a reasonable doubt.

*Id.* at 1320.

¶ 45 In *Mayes,* relied upon in *Johnson,* the jury sent out a note from deliberations asking, "if life without parole was given was there ever a possibility of release from prison". 887 P.2d at 1316. The trial judge responded saying the instructions were self-explanatory. This Court found no error in the court's response stating there is no requirement for a trial judge to explain the Oklahoma parole process to a jury. *Id.* at 1318.

¶ 46 In *McCracken,* the jury sent out a note asking, "Does Life without Parole mean exactly that? He would never under any circumstances, get out of prison?" The trial court responded, "I will instruct you again to look at your instructions. The law in Oklahoma provides a person convicted of Murder in the First Degree is punishable by death, by life without parole or life. You may retire and deliberate further." 887 P.2d at 334. This Court found the instructions self-explanatory and that the trial court did not err by refusing a defense instruction setting forth Article VI, Section 10 of the state constitution which prohibits the governor from granting parole to a person who receives a sentence of life without parole. *Id.*

¶ 47 In *McGregor,* the trial court did not respond to the jury's question "about what would happen to McGregor if he were sentenced to life without parole." 885 P.2d at 1383. Relying on *Mayes* this Court found no

plain error as the trial court is not required to explain the Oklahoma parole process. *Id.*

¶ 48 The court's response to the jurors' questions in this case was non-responsive and as such forced the jury to fall back on the plain meaning of the instructions—instructions which merely set out the three punishment options of death, life without parole and life imprisonment. (O.R.437). While the trial court could have specifically referred the jury back to those instructions, it was not required to further define the punishment options or explain the parole process. We find the jury was not confused or misled by the court's response as Appellant has failed to show that when the jury returned its verdict on punishment that it was confused or misunderstood any of the three punishment options. Finding no prejudice occurred to Appellant, the error was harmless and this assignment of error is denied.

### D.

■ ¶ 49 In his tenth assignment of error, Appellant challenges the aggravating circumstances found in this case.[3] Initially, he argues the evidence was insufficient to support the aggravator of "especially heinous, atrocious or cruel", that the trial court failed to properly instruct the jury on this aggravator, and that the aggravator is unconstitutionally vague and overbroad. Further, he argues the aggravator of "continuing threat" has been applied by this Court in an overbroad and unconstitutionally vague manner, that the evidence supporting this aggravator was insufficient, that the jury was not properly instructed on the manner in which it should evaluate the evidence of unadjudicated acts and that other improper evidence was wrongly admitted in the penalty phase.

■ ¶ 50 When the sufficiency of the evidence of an aggravating circumstance is challenged on appeal, the proper test is whether there was any competent evidence to support the State's charge that the aggravating circumstance existed. In making this determination, this Court should view the evidence in the light most favorable to the

---

**3.** Appellant does not challenge the third aggravator returned, that he had been previously convicted of a felony involving the use or threat of violence.

State. *Bryson,* 876 P.2d at 259; *Romano v. State,* 847 P.2d 368, 387 (Okl.Cr.1993), *cert. granted and case aff'd; Romano v. Oklahoma,* 512 U.S. 1, 114 S.Ct. 2004, 129 L.Ed.2d 1 (1994). Evidence supporting a finding that a murder was especially heinous, atrocious or cruel requires proof that the death was preceded by torture or serious physical abuse. *Neill v. State,* 896 P.2d 537, 555 (Okl.Cr.1994), *cert. denied,* 516 U.S. 1080, 116 S.Ct. 791, 133 L.Ed.2d 740, (1996).

¶ 51 Appellant challenges the torture aspect, both mental and physical, of this aggravator. He argues that as the wounds were rapidly inflicted, that although some wounds were fatal and others were superficial, that as the victim was still standing when police arrived and as the attack was provoked by the victim, this case is indistinguishable from *Nguyen v. State,* 769 P.2d 167 (Okl.Cr.1988); *Cheney v. State,* 909 P.2d 74 (Okl.Cr.1995); *Brown v. State,* 753 P.2d 908 (Okl.Cr.1988) and *Hayes v. State,* 845 P.2d 890 (Okl.Cr. 1992). Cases in which this Court found there was no evidence of torture or serious physical abuse sufficient to support the "especially heinous, atrocious or cruel" aggravator.

¶ 52 In *Berget v. State,* 824 P.2d 364, 373 (Okl.Cr.1991), *cert. denied,* 506 U.S. 841, 113 S.Ct. 124, 121 L.Ed.2d 79 (1992) we stated that torture may include the infliction of either great physical anguish or extreme mental cruelty. *See also Neill,* 896 P.2d at 555. The "torture creating extreme mental distress must be the result of intentional acts by the defendant. The torture must produce mental anguish in addition to that which of necessity accompanies the underlying killing. Analysis must focus on the acts of the defendant toward the victim and the level of tension created." *Cheney,* 909 P.2d at 80. The mental torture element is confined to cases in which the victim is terrorized for a significant period of time before death. *Id.* at 81.

¶ 53 In the cases relied upon by Appellant, this Court found the evidence did not show that the victims suffered prior to their deaths. In the present case, the evidence showed that the victim was conscious as he was attacked with a knife and a broken beer bottle and desperately sought to run away from his attacker and defend himself. He

was able to talk with the first officer who responded to the scene and identify Appellant as the assailant. Therefore, unlike the cases cited by Appellant, there was no need for the jury to speculate as to whether the victim remained conscious after the infliction of the initial wounds or whether he suffered mental anguish.

¶ 54 Further, the evidence in this case showed the victim did not die immediately, but was left to languish from multiple knife wounds. Leaving a victim to linger and languish after he was stabbed is sufficient to support this aggravator. *See McCracken,* 887 P.2d at 332. Therefore, we find sufficient evidence of the victim's mental torture and conscious physical suffering to support this aggravator.

¶ 55 Appellant next argues the trial court's instructions on this aggravator did not limit the jury's consideration to constitutional objective considerations. Appellant's objection at trial to the instruction on this aggravator has preserved the issue for appellate review. The jury was instructed the phrase "especially heinous, atrocious or cruel" is directed to those crimes where the death of the victim is preceded by torture of the victim or **serious abuse** rather than **serious physical abuse** as set out in the uniform jury instruction. (emphasis added). *See* OUJI–Cr. 436 (1st ed.). Appellant contends that without the modifier "physical abuse" the jury could have interpreted the aggravator in an unconstitutionally vague and overbroad manner. He also asserts such misinstruction was critical as the element of torture was not involved in this case.

¶ 56 This deviation from the uniform instruction is error. *Johnson v. State,* 928 P.2d 309, 318 (Okl.Cr.1996). However, we are not persuaded the error lessened the standard of proof which the jury had to apply to find this aggravator or that it misled the jury into interpreting the aggravator in an unconstitutional manner. *Id.; see also Richie v. State,* 908 P.2d 268, 278 (Okl.Cr.1995). The term "serious abuse" controls the standard of proof, and that term was given to the jury. *Johnson,* 928 P.2d at 318. Further, under the evidence presented at trial, torture

**1248**

as it is ordinarily understood was involved, and there is no indication the jury understood the phrase "serious abuse" in any sense other than as "serious physical abuse." Therefore, we find the error harmless as it did not lessen the standard of proof and thus could have had no impact on the sentencing decision. *Simpson,* 876 P.2d at 698–99.

¶ 57 Appellant also poses the question whether the term "serious physical abuse" serves to sufficiently limit this aggravator at trial and on appeal. That question was answered in the affirmative in *Stouffer v. State,* 742 P.2d 562, 564 (Okl.Cr.1987), *cert. denied,* 484 U.S. 1036, 108 S.Ct. 763, 98 L.Ed.2d 779 (1988). Relying on *Robinson v. State,* 900 P.2d 389 (Okl.Cr.1995) Appellant argues this Court has effectively negated the narrowing definition approved in *Stouffer* by finding only momentary consciousness following a gun shot wound is sufficient to show great physical anguish or extreme mental cruelty. Appellant's argument is not well taken as the evidence in *Robinson* showed the victim was shot twice in the back as he was running away. The victim fell and turned over, asking "what is going on?". The appellant walked up to the victim, shot him twice and calmly walked away, leaving the wounded victim to linger and languish. The victim remained conscious long enough to tell bystanders to call an ambulance. This Court found the evidence showed the victim was in conscious pain for a period of time and that such evidence was sufficient to bring the crime within the definition of "especially heinous, atrocious or cruel" as narrowed by *Stouffer.*

¶ 58 Appellant's further argument, that the aggravator is unconstitutionally vague and overbroad was rejected in *Williamson v. State,* 812 P.2d 384, 407 (Okl.Cr. 1991), *cert. denied,* 503 U.S. 973, 112 S.Ct. 1592, 118 L.Ed.2d 308 (1992), and we find no reason to hold differently now. Accordingly, the "especially heinous, atrocious or cruel aggravator" facially and as applied in this case is constitutionally valid.

¶ 59 Appellant next challenges the aggravating circumstance of "continuing threat". While recognizing this Court has previously rejected such constitutional at-

tacks, he asks this Court to revisit the issue. Although Appellant presents a very thorough argument, he has failed to convince us that our finding of the validity of this aggravator as set forth in *Valdez v. State,* 900 P.2d 363, 381 (Okl.Cr.1995) and *Bryson,* 876 P.2d at 259 should be reconsidered. As we noted in *Roberts v. State,* 910 P.2d 1071, 1083 n. 7 (Okl.Cr.1996) this Court is aware that one federal district court has concluded the use of unadjudicated crimes can result in a constitutional violation. *See Williamson v. Reynolds,* 904 F.Supp. 1529 (E.D.Okla.1995), *overturned on other grounds, Williamson v. Ward,* 110 F.3d 1508 (10th Cir.1997) (the 10th Circuit specifically finding that "consideration of evidence of unadjudicated crimes in imposing the death sentence does not violate a petitioner's due process rights," quoting *Hatch v. Oklahoma,* 58 F.3d 1447, 1465 (10th Cir.1995)). Further, the United States Supreme Court has generally approved the constitutionality of the "continuing threat" aggravator. *See Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 2956, 49 L.Ed.2d 929, 938 (1976). *See also Tuilaepa v. California,* 512 U.S. 967, 114 S.Ct. 2630, 2637, 129 L.Ed.2d 750 (1994).

¶ 60 Appellant additionally argues that evidence of unadjudicated offenses was wrongly admitted in support of the "continuing threat" aggravator. Appellant asserts the error was compounded by an instruction which did not properly instruct the jury on the use of this evidence.

¶ 61 This Court has previously upheld the use of unadjudicated offenses to support the "continuing threat" aggravator. *Hain,* 919 P.2d at 1141; *Paxton v. State,* 867 P.2d 1309, 1325 (Okl.Cr.1993), *cert. denied,* 513 U.S. 886, 115 S.Ct. 227, 130 L.Ed.2d 153 (1994). Instruction No. 11, challenged on appeal, was not met with an objection therefore, we review only for plain error.

¶ 62 The following instruction was given to the jury:

There has been evidence of other unadjudicated acts of violent conduct offered by the State in support of the aggravating circumstance that the defendant would commit

acts of violence that would constitute a continuing threat against society. .

There is no legal requirement that criminal charges must be filed before you as a jury can consider allegations of criminal conduct by the defendant with respect to this circumstance, nor is it necessary there be a final conviction for such unrelated criminal conduct. Whether the defendant committed these alleged crimes is a matter to be determined by you the jury, based upon the evidence presented to you in open court. (O.R.436).

¶ 63 Appellant argues this instruction allowed the jury to use the evidence of unadjudicated offenses without even making a finding that he had committed the offense beyond a reasonable doubt, thus unconstitutionally lessening the State's burden of proof with respect to this aggravating circumstance.

¶ 64 Instruction No. 11 is not a uniform (OUJI–Cr) instruction. In fact the uniform instructions do not set forth an instruction explaining or defining unadjudicated acts. Appellant has cited no authority requiring such an instruction or mandating such an instruction. The instruction given was an accurate statement of the law as a final conviction is not necessary for prior criminal activity to be relevant to the "continuing threat" aggravator. *See Paxton,* 867 P.2d at 1322. Further, the existence of the aggravating circumstance in general must be proved beyond a reasonable doubt, not the individual pieces of evidence which make up the aggravator. Contrary to Appellant's argument, the instruction does not allow the jury to use evidence of unadjudicated acts for "whatever purpose the jury chose." (Appellant's brief, pg. 75) It specifically directs the jury that such evidence was to be considered only as it pertained to the aggravating circumstance of "continuing threat". We find the instruction does not constitute plain error.

¶ 65 Appellant further complains about other evidence admitted to prove the "continuing threat" aggravator. Initially, he complains about testimony from Miami Police Chief Gary Anderson that he had arrested or had contact with Appellant on numerous occasions and that his reaction upon hearing of Appellant's involvement in the homicide was "it was bound to happen sooner or later." He argues that the lack of pre-trial notice for this testimony violated his Eighth Amendment right to a reliable sentencing proceeding.

¶ 66 Title 21 O.S.1991, 701.10, provides that "[o]nly such evidence in aggravation as the state has made known to the defendant prior to his trial shall be admissible" during second stage proceedings. We have held that section 701.10, along with *Okla. Const. art.* II, 20, requires the State to provide a capital defendant with "a summary of the evidence intended to support the alleged aggravating circumstances, and a list of witnesses the State might call" and not a detailed description of anticipated second stage evidence. *Walker v. State,* 887 P.2d 301, 316–17 (Okl.Cr.1994); *see also Wilson v. State,* 756 P.2d 1240, 1245 (Okl.Cr.1988). The purpose of this pre-trial notice requirement is "to allow the defendant time to present a defense or an explanation for alleged criminal misconduct." *Walker,* at 316–17. Stated in more general terms, its purpose is "to apprise the defendant of evidence relevant to sentencing which will be introduced for the first time in the sentencing hearing." *Id.* "[F]ailure to object to lack of notice, either at a pre-trial hearing or at the time the challenged evidence is offered, will result in waiver of this statutory right." *Id.*

¶ 67 Neither challenged comment was met with an objection as to insufficient notice. Appellant's failure to object on the lack of notice, grounds that he raises now on appeal, waives all but plain error review of the issue.

¶ 68 Chief Anderson was listed on the State's initial List of Second Stage Witnesses (O.R.78). A summary of his testimony was provided in the State's Summary of Witness Testimony filed approximately one year prior to trial. (O.R.84). The summary stated that the testimony would be consistent with police reports provided to Appellant and as present at the scene. Anderson was again listed on an Amended List of Second Stage Witnesses and Summary of Witness Testimony filed

March 22, 1996. (O.R.290, 297). Based upon this record, Appellant had sufficient notice of Anderson's testimony.

¶ 69 Appellant further argues the second challenged comment was a personal opinion, not relevant to the issues. Anderson's comment that "it was bound to happen sooner or later" was a spontaneous remark which in light of the evidence did not prejudice Appellant.

■ ¶ 70 Appellant next complains that a public drunk incident which occurred while he was a juvenile was improperly used during second stage proceedings as it could not have been used to enhance punishment under 21 O.S.1991, 51. The enhancement of punishment in a non-capital case and the sentencing stage of a capital trial serve entirely separate purposes. *Carter v. State*, 879 P.2d 1234, 1250 (Okl.Cr.1994), *cert. denied*, 513 U.S. 1172, 115 S.Ct. 1149, 130 L.Ed.2d 1107 (1995); *Paxton*, 867 P.2d at 1322. Here, evidence of the prior unadjudicated offense was specifically admitted to support the aggravating circumstance of "continuing threat." The enhancement of punishment was not an issue in this case. The jury was thoroughly informed, through argument and instructions, as to the consideration to be given the unadjudicated offenses. Therefore we find no error in the admission of this evidence.

■ ¶ 71 Finally, Appellant finds error in the admission of testimony by a jailer that Appellant enjoyed watching violent movies and got excited while watching them. Appellant's objection to the testimony preserved the issue for appellate review. We find this testimony relevant in proving Appellant's propensity for violence and the existence of a probability that Appellant would commit criminal acts of violence that would constitute a continuing threat to society. Based upon the foregoing, we find Appellant was not denied a reliable sentencing proceeding by the admission of improper evidence. Accordingly, this assignment of error is denied.

¶ 72 In his eleventh assignment of error, Appellant challenges the second stage jury instructions. He acknowledges that several of his arguments have been previously rejected by this Court, but presents them again to preserve them for future appeals and to urge this Court to reconsider the arguments.

■ ¶ 73 First, he asserts the instructions failed to inform the jury that its findings regarding mitigating circumstances did not have to be unanimous. This argument has previously been rejected in *Bryson*, 876 P.2d at 262; *Pickens v. State*, 850 P.2d 328, 339 (Okl.Cr.1993), *cert. denied* 510 U.S. 1100, 114 S.Ct. 942, 127 L.Ed.2d 232 (1994). We are not persuaded to hold differently now.

■ ¶ 74 Next, he asserts the instructions on the issue of mitigation permitted the jury to ignore mitigating evidence altogether, and seriously diminished the effect of mitigating evidence presented in this case. In Instruction No. 7 the jury was instructed that mitigating circumstances are those which "may be considered" as extenuating or reducing the degree of blame. Appellant contends that using such permissive language instead of the mandatory language of "must be considered" allowed the jury to disregard mitigating evidence[4]. This same instruction was given in *Pickens* wherein we rejected the argument that the instruction allowed the jury to ignore mitigating evidence. 850 P.2d. at 339.

■ ¶ 75 Appellant also argues the trial court erred in failing to instruct the jury that it could consider a sentence of life or life without parole even though they had found the existence of one or more aggravating circumstances. This argument has consistently been rejected as this Court has held that the trial court is not required to inform the jury that they may disregard the aggravating circumstances and impose a life sentence. *Valdez*, 900 P.2d at 385; *Bryson*, 876 P.2d at 262.

■ ¶ 76 Appellant next asserts the instructions on the manner in which the jury

---

4. Instruction No. 7 reads in its entirety: Mitigating circumstances are those which, in fairness and mercy, may be considered as extenuating or reducing the degree of moral culpability or blame. The determination of what are mitigating circumstances is for you as jurors to resolve under the facts and circumstances of this case. (O.R.432).

was to weigh aggravating circumstances was erroneous and set forth an improper burden of proof. He complains that Instruction No. 8, which is verbatim OUJI–Cr 440 (1st ed.) improperly permitted the jury to weigh the totality of the aggravating circumstances against each individual mitigating circumstance rather than weighing the aggregate mitigating factors against each separate aggravating circumstance as required by 21 O.S.1991, 701.11. Appellant's objection to Instruction No. 8 has preserved the issue for appellate review.

¶ 77 Specific standards for balancing aggravating and mitigating circumstances are not constitutionally required. *Zant v. Stephens,* 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983); *see also Mitchell v. State,* 884 P.2d 1186, 1206 (Okl.Cr. 1994). Whether aggravators outweigh mitigating circumstances is left to the jury's discretion. *Johnson v. State,* 731 P.2d 993, 1004 (Okl.Cr.1987), *cert. denied,* 484 U.S. 878, 108 S.Ct. 35, 98 L.Ed.2d 167 (1987). Instruction No. 8 informed the jury that a finding of aggravating circumstances beyond a reasonable doubt is not by itself sufficient to assess the death penalty. Rather, the aggravating circumstances must clearly outweigh any mitigating circumstances before the death penalty may be imposed. This Court has held similar instructions constitutional, rejecting the argument now made by Appellant. *Mitchell,* 884 P.2d at 1206; *Revilla v. State,* 877 P.2d 1143, 1153 (Okl.Cr.1994), *cert. denied,* 513 U.S. 1096, 115 S.Ct. 764, 130 L.Ed.2d 661 (1995). Accordingly, this assignment of error is denied.

### PREJUDICIAL PHOTOGRAPHS CLAIM

¶ 78 In his fifth assignment of error, Appellant challenges the admissibility of photographs of the victim and autopsy slides. He argues that since he did not contest the cause or manner of death, the photos and slides had little, if any, probative value. Specifically, Appellant directs our attention to State's Exhibits No. 5 and 9. These are color photographs, 11 × 14 inches in size showing a full body view of the victim and a close-up of the victim's head, respectively. Appellant

also directs us to eighteen (18) slides illustrating wounds to the victim.

These are the same photographs and slides found admissible in *Conover,* 933 P.2d at 912–913. Appellant's arguments have not persuaded us to change that view.

¶ 79 Appellant further asserts admission of the photographs and slides denied him a fair sentencing proceeding. As the exhibits were properly admitted during the first stage of trial, and as they were relevant in establishing the aggravating circumstance of "especially heinous, atrocious or cruel", we find they did not deny Appellant a fair sentencing proceeding. Accordingly, this assignment of error is denied.

### INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM

¶ 80 In his twelfth assignment of error, Appellant contends he was denied the effective assistance of counsel by trial counsel's failure to cross-examine the victim impact witnesses on certain aspects of the victim's character, specifically that he was a convicted drug dealer. Appellant also claims counsel was ineffective by failing to cross-examine into that same area during the first stage testimony of Detective Pendley and to otherwise bring this evidence before the jury.

¶ 81 Trial counsel is presumed competent to provide the guiding hand that the accused needs, and therefore the burden is on the accused to demonstrate both a deficient performance and resulting prejudice. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). *Strickland* sets forth the two-part test which must be applied to determine whether a defendant has been denied effective assistance of counsel. First, the defendant must show that counsel's performance was deficient, and second, he must show the deficient performance prejudiced the defense. Unless the defendant makes both showings, "it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687, 104 S.Ct. at 2064. Appellant must demonstrate that counsel's representation was unreasonable under pre-

vailing professional norms and that the challenged action could not be considered sound trial strategy. *Id.* at 688–89, 104 S.Ct. at 2065–66.

■ ¶ 82 When a claim of ineffectiveness of counsel can be adjudicated on the ground of lack of prejudice, that course should be followed. *Id.* at 696, 104 S.Ct. at 2070, 80 L.Ed.2d at 699. Concerning the prejudice prong, the Supreme Court, in interpreting *Strickland,* has held:

[an appellant] alleging prejudice must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland,* 466 U.S., at 687, 104 S.Ct., at 2064; *see also Kimmelman v. Morrison,* 477 U.S. 365, 374, 106 S.Ct. 2574, 2582, 91 L.Ed.2d 305 (1986) ("The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect"); *Nix v. Whiteside,* 475 U.S. [157], at 175, 106 S.Ct. [988], at 998[, 89 L.Ed.2d 123 (1986)]. Thus, an analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective. To set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him. *See [United States v.] Cronic,* 466 U.S. [648], at 658, 104 S.Ct. [2039], at 2046[ 80 L.Ed.2d 657 (1984)].

*Lockhart v. Fretwell,* 506 U.S. 364, 369–70, 113 S.Ct. 838, 842–43, 122 L.Ed.2d 180, 189 (1993) (footnote omitted). Although we must consider the totality of the evidence which was before the factfinder, our "ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged." *Strickland,* at 695, 104 S.Ct. at 2069; *Fisher v. State,* 736 P.2d 1003, 1012 (Okl.Cr.1987), *cert. denied* 486 U.S. 1061, 108 S.Ct. 2833, 100 L.Ed.2d 933 (1988).

■ ¶ 83 In the present case, apart from a reference to an "NCIC" report in the original record, there is nothing in the record to indicate the victim had been convicted of

any crime, including a drug crime. Further, Appellant's defense was that of self-defense, specifically denying the use or any involvement with drugs. He testified that while co-defendant Conover was visiting the Davises he just happened to remember that the victim lived next door and went over talk to him about tattoos. During their conversation, the victim suddenly attacked and Appellant was forced to defend himself. To introduce evidence that the victim was involved with drugs would have only weakened Appellant's defense of self-defense in light of the evidence showing Appellant had been looking for drugs prior to arriving at the victim's home. Further, if evidence had been presented that the victim had drugs and drug paraphernalia in his home at the time of the murder, it would only have served to strengthen the State's theory that Appellant killed the victim when he failed to provide the drugs. Based upon this record, counsel's failure to introduce any evidence in the first stage of trial concerning the victim's involvement with drugs appears to have been a strategic decision. Counsel seemed to focus the defense on self-defense and purposely avoid the role illegal drugs may have played in the case. Focusing and narrowing the defense based upon the State's evidence is a valid strategy. This Court has declined to second guess trial strategy on appeal. *Smith v. State,* 650 P.2d 904, 908 (Okl.Cr.1982). That the strategy proved unsuccessful is not grounds for branding counsel ineffective. Absent a showing of incompetence, the appellant is bound by the decisions of his counsel and mistakes in tactic and trial strategy do not provide grounds for subsequent attack. *Davis v. State,* 759 P.2d 1033, 1036 (Okl.Cr. 1988).

¶ 84 Further, any failure to bring out evidence of the victim's involvement with illegal drugs during the second stage of trial was also a strategic decision. While victim impact witnesses are subject to the same rules of cross-examination as other witnesses, the decision to cross-examine relatives of the victim on negative aspects of the victim's character is a matter best left to trial counsel who observes the witnesses and jury first hand. The pursuit of such an issue could have a

devastating effect on the Appellant's plea for a sentence of less than death. The failure to obtain explicit admissions from the victim impact witnesses did not deny Appellant a reliable sentencing proceeding.

¶ 85 Appellant also asserts counsel was ineffective in his failure to object to improper cross-examination of Appellant regarding his prior convictions and his post-arrest silence, and in his failure to object to "flawed" sentencing instructions on "especially heinous, atrocious or cruel" and "continuing threat".

¶ 86 In Proposition II, we discussed the prosecutor's inquiry into Appellant's prior convictions and post-arrest silence. We found no error in the inquiry into the prior convictions and harmless error in the inquiry into his post-arrest silence. Therefore, counsel's failure to object to the two lines of inquiry did not prejudice Appellant as it did not affect the fundamental fairness of the trial. Further as discussed in Proposition X, the instructions given to the jury on the aggravating circumstances of "especially, heinous, atrocious or cruel" and "continuing threat" did not deny Appellant a reliable sentencing hearing. Therefore, counsel's failure to object to these instructions did not prejudice Appellant. Accordingly, we find Appellant was not denied the effective assistance of counsel and this assignment of error is denied.

### ACCUMULATION OF ERRORS CLAIM

¶ 87 In his final and thirteenth assignment of error, Appellant contends that, even if no individual error merits reversal, the cumulative effect of such errors warrants either reversal of his conviction or a modification of his sentence. We have reviewed Appellant's complaints and found any errors harmless beyond a reasonable doubt. Therefore, there can be no cumulative error. Error relating to victim impact evidence admitted in the second stage is addressed in the mandatory sentence review below.

### MANDATORY SENTENCE REVIEW

88 Pursuant to 21 O.S.1991, 701.13(C), we must determine (1) whether the sentence of death was imposed under the influence of passion, prejudice or any other

arbitrary factor, and (2) whether the evidence supports the jury's finding of the aggravating circumstances as enumerated in 21 O.S.1991, 701.12. Turning to the second portion of this mandate, the jury found the existence of three (3) aggravating circumstances: 1) the murder was especially heinous, atrocious or cruel; 2) the defendant was previously convicted of a felony or felonies involving the use or threat of violence to the person; and 3) the existence of a probability the defendant would commit criminal acts of violence that would constitute a continuing threat to society. 21 O.S.1991, 701.12(4),(1),(7).

¶ 89 As discussed previously, we have found the aggravator of "continuing threat" and "especially heinous, atrocious or cruel" supported by sufficient evidence. Appellant does not contest the sufficiency of the evidence as it pertains to the "prior violent felony" aggravator. However, we have reviewed the evidence and find the aggravator is supported by evidence of prior convictions for Aggravated Assault and Battery on a Police Officer and Assault and Battery with a Dangerous Weapon, After Former Conviction of a Felony. *Paxton*, 867 P.2d at 1325.

¶ 90 Turning to the mitigating evidence, Appellant presented four (4) witnesses, including his wife, mother, friend, and a licensed clinical psychologist. These witnesses testified that Appellant's mental capacity was impaired by a combination of substance abuse and childhood trauma; that he has family members and friends who love him and who will, if he is not put to death, visit him and maintain a relationship with him; the mental impairment Appellant suffers from is controllable by medication and deprivation of drugs and alcohol; and Appellant benefits from a controlled environment such as that provided in prison. We find the aggravating circumstances sufficiently outweigh the mitigating evidence presented by Appellant at trial.

¶ 91 We now address the first question: whether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor. As not-

**1254** ■ 

ed above in our discussion of Proposition VII, we found error in the amount and type of victim impact evidence presented to the jury. However, as our discussion of the aggravating circumstances shows, the victim impact evidence was not the only evidence presented during the sentencing stage. As discussed in *Cargle*, any error in the admission of victim impact evidence is a trial error "which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt." 909 P.2d at 835 quoting *Bartell v. State*, 881 P.2d 92, 98 (Okl.Cr.1994). 909 P.2d at 835. In the present case, the jury was properly instructed on the use of victim impact evidence and Appellant received sufficient notice of the victim impact evidence to be introduced. Further, given the fact that we have determined, independently of the victim impact evidence, there was sufficient evidence to support three aggravating circumstances, we can safely hold that portion of the victim impact evidence which was improperly admitted was harmless beyond a reasonable doubt as the improperly admitted evidence does not undermine the reliability of the verdict as to the sentence imposed.[5]

¶ 92 Having reviewed the evidence and applicable law, we find the sentence of death was not imposed under the influence of passion, prejudice or any other arbitrary factor. Accordingly, finding no error warranting reversal or modification, the judgment and sentence of the trial court is **AFFIRMED.**

JOHNSON, J., concurs.

CHAPEL, P.J., STRUBHAR, V.P.J., and LANE, J., concur in results.

STRUBHAR, Vice Presiding Judge, Concur in Results:

¶ 1 I concur in results by reason of *stare decisis*. I continue to believe that a trial court should provide a meaningful answer to questions from a jury when they ask about the meaning of life without parole.

¶ 2 In addition, although harmless, I believe it error to have given Instruction No. 11 which is not a uniform (OUJI–CR) instruction.

---

5. In a Motion for Leave to File Supplemental Authority, Appellant asserts that the recent case of *Willingham v. State*, 947 P.2d 1074 (Okl.Cr. 1997) compels vacation of his death sentence on

the grounds of improper victim impact evidence. We have reviewed *Willingham* and find it is not in conflict with our decision in this case.